SEABOARD AIR LINE RY. v. CONTINENTAL TRUST CO.

CONTINENTAL TRUST CO. v. SEABOARD AIR LINE RY. et al.

(Circuit Court, N. D. Georgia. August 3, 1908.)

RECEIVERS (§ 158*) — CLAIMS ENTITLED TO PRIORITY — CLAIMS OF ATTORNEYS— "EMPLOYÉS."

An attorney duly appointed and serving as division counsel for a railroad company, having charge of "all litigation and other legal matters" within the territory constituting his division to which the company is a party or in which it may be interested, furnished with annual passes and telegraph franks as such division counsel, and having authority to appoint local counsel, subject to the approval of the general counsel of the company, although paid by fees on accounts rendered and audited at stated periods, instead of by salary, is an "employé," and his accounts for services so rendered are for a current debt arising in the operation of the road, and within the terms of an order of court, appointing receivers for the company, which authorized them to pay from the earnings of the property "all amounts due to operators and employés * * * and unpaid pay rolls and supply accounts incurred in the operation of" the road within the preceding six months and entitled to priority of payment thereunder from current earnings over the claims of mortgage bondholders.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 304; Dec. Dig. § 158.*

For other definitions, see Words and Phrases, vol. 3, pp. 2369–2377; vol. 8, p. 7649.]

In Equity. On exceptions to report of special master.

The following is the report of the special master:

To the Honorable Judges of said Court:

Pursuant to the notice of the special master, to whom, under orders heretofore entered, the above-entitled cause has been referred, a hearing was held in the United States Circuit Court room at Atlanta, Ga., beginning at 10 o'clock a. m. June 22, 1908, for the purpose of taking testimony and hearing argument in the claims of counsel of the Seaboard Air Line Railway for professional services rendered previous to the receivership.

Judge L. L. Lewis, of counsel for the receivers, indorsed on the pleadings in the above-stated intervention the following: "It is admitted by the receivers that the averments of facts contained in the foregoing statements are true; they not admitting, however, that the matters stated therein as conclusions of law are correct, but these matters are submitted to the court."

J. Randolph Anderson, of Savannah, Ga., being first duly sworn, testified in substance that he had been division counsel for the Seaboard Air Line Railway and its predecessor, with headquarters at Savannah, and that he had always been paid a salary, and that on January 2, or 3, 1908, he received, as usual, his voucher for services rendered during the month of December, 1907, and that he had also received voucher covering his expense account and amounts advanced by him on behalf of the company to pay judgments and court costs and matters of that kind. He also testified that his duties were in fact, so far as he knew, the same as the duties of Brown & Randolph, the interveners in this case, with the exception that he was on a salary basis, instead of a fee basis. The testimony in detail is hereto attached.

Counsel for receivers objected to this testimony so far as it related to the payment of the claim of Mr. Anderson by the receivers after the receivership, on the ground that what the receivers did in that matter cannot affect the legal proposition involved in the case before the special master. The special master ruled that this evidence is admissible, because it illustrates and throws light on the very issue now in question, and the same will be referred to later in the findings of law.

. Now, as to the question of fact involved in this intervention, I find that the Seaboard Air Line Railway had a regularly organized law or legal department, and that the Honorable Legh R. Watts was the head thereof, with the title of "General Counsel."

I find that as such general counsel he had the authority to appoint different counsel in the different states through which the Seaboard Air Line Railway ran, some for the entire state, and some for portions of a state, and some for one county, and that these counsel were called, respectively, "Division Counsel," "District Counsel," and "Local Counsel," depending on the territory which each had under his supervision.

I find that several years since Brown & Randolph, a firm composed of E. T. Brown and H. N. Randolph, were appointed division counsel of the Seaboard Air Line Railway at Atlanta, Ga., by the general counsel of the said railway, and that the counties of Fulton, Cobb, Paulding, Polk, and Bartow, in th.. state of Georgia, comprised their territory.

I find that said Brown & Randolph accepted this appointment, and have been the division counsel of the Seaboard Air Line Railway in Atlanta since the appointment and up to the date that the Seaboard Air Line Railway went into the hands of receivers, viz., January 2, 1908.

I find that they had supervision over all the legal business of the Seaboard Air Line Railway in the territory named; that they could not, under the terms of their agreement, take any business against the company; that their employment all the time was continuous, and bound them the same as if they had been the salaried attorneys of the Seaboard Air Line Railway; that they regularly and continuously devoted their time and attention to the legal business of the said railway in the territory named; that under said appointment they were required to appear in all the courts of said territory, and defend all the causes brought against said railway in such territory, and to institute all suits on behalf of said railway in said territory, and were also required to continuously advise officials and employés of said railway in and about the legal matters pertaining to their duties, and generally to perform all legal work arising within said territory in connection with the operation of said railway in each and all of its departments. They were deprived of the right to accept any retainers against either of said railways. They had no alternative, under the terms of their employment, to accept or refuse the business tendered them, but were compelled to look after and attend to all the business in the territory committed to their charge by the general counsel or resign.

During said time circular letters, issued by the general counsel and directed to the division and district counsel of said Seaboard Air Line Railway, were regularly sent to them as division counsel; that they were furnished with letter heads, envelopes, voucher blanks, and other blanks pertaining to their duties; that they were addressed in the correspondence between them and the general counsel, and other departments of the said railway, as "Division Counsel," and always signed their letters and correspondence as "Division Counsel." They were required to and usually did make monthly or periodical re-

ports on the status of the litigation in their division. They were compensated for their services, not upon the salary basis, but upon what is known as the "fee system"; it being understood and agreed that they were to be paid for their services as division counsel a reasonable compensation for each and every matter handled by them, instead of receiving a regular stipulated salary from month to month, and they were to render at the end of each month to the general counsel a statement of the services completed by them during the previous month, with the fees charged by them therefor, which fees were subject to the approval of the general counsel. These statements were accompanied by vouchers on forms furnished by the said railway, and after approval by the general counsel were by him delivered to the auditing department for auditing, and then to the treasurer of said railway for payment.

They were required to wait for the completion of each service before rendering a bill therefor, and their compensation did not become due and payable for each particular service until the 1st of the month next succeeding the month in which said services were completed. As division counsel they were furnished by the railway with passes over its entire system, and also with interchange passes over other railroads, as well as frank of the Western Union Telegraph Company, and Pullman passes good over the Seaboard Air Line Railway System and connecting lines, all of which passes designated them as "District Counsel, Seaboard Air Line Railway."

I find, further, that said Brown & Randolph had under their charge, by the appointment above set out, all the legal business within said territory of the Atlanta & Birmingham Air Line Railway, which is a railroad corporation operating a railroad from the city of Atlanta, in the state of Georgia, to and into the city of Birmingham, in the state of Alabama, and which, though an independent corporation, was run and operated in fact as a part or division of the system of railroads operated and conducted by the said Seaboard Air Line Railway, and all the capital stock of which the Seaboard Air Line Railway owned and controlled. I find, also, that the Atlanta & Birmingham Air Line Railway had as its general officers the same officers as the Seaboard Air Line Railway, including the general counsel of the Seaboard Air Line Railway.

I find further, that said Brown & Randolph rendered professional services for said Seaboard Air Line Railway prior to January 2, 1908, under the appointment above set out, and that said railway is indebted to them in the amount of $2,665, as shown in attached accounts. I find, also, that the said Seaboard Air Line Railway is indebted to them for professional services rendered the Atlanta & Birmingham Air Line Railway, under the appointment above set out, in the amount of $187.50.

I find, further, that there has been a diversion of current receipts for the purpose of paying interest on the bonds in an amount in excess of the claim of the said Brown & Randolph. (See original bill by Seaboard Air Line Railway v. Trust Company and answer of Trust Company; also cross-bill by Trust Company, and the original bill by the Trust Company, and also application made by the receivers for leave to issue receiver's certificates.) I find that said professional services were rendered to the Seaboard Air Line Railway since June 30, 1907, and previous to January 2, 1908, and that the indebtedness therefor was incurred in the operation of the property.

It will be noted by letter of W. Carroll Latimer, hereto attached, that he had an arrangement with the firm of Brown & Randolph, and that that firm is entitled to the amount due for his services. Such amount is included in the above finding.

The legal contentions in this case are as follows: Interveners, or claimants, on the one hand, insist that they were regularly employed attorneys of the Seaboard Air Line Railway and the Atlanta & Birmingham Air Line Railway, and that their services as such attorneys were necessary to the operation of the railroad, and that such services were rendered regularly by them in conformity with the ordinary course of the business of said company, and that the compensation due them by the Seaboard Air Line Railway is a current debt, arising in the ordinary course of the business of the company, and properly chargeable to its current receipts for and during the six months next preceding the appointment of the receivers, as provided in the decree of the court

of January 2, 1908, appointing the receivers. On the other hand, "independently of the order, and without reference to it, they claim a preference on the broad principle declared by the decisions that such services are entitled to a preference by reason of their character, especially in view of the peculiar circumstances of this case, and the general purpose had in view, and the necessary effect the appointment of the receivers had, wresting, as it did, the management and control of the property from the debtor company and in appropriating revenues" (quoted from brief, page 26).

Counsel for receivers, in opposing these contentions, denies that the claim is payable under the terms of the decree of January 2, 1908, appointing the receivers, and they also deny the second ground of the claim, holding that a judgment in favor of an attorney has no lien prior to the rights of the mortgages, but stands on an equality with general judgment creditors.

In the argument before the special master and in the briefs of counsel filed considerable time and attention was devoted to the words of the decree of January 2, 1908, viz., that portion authorizing the receivers to pay "all amounts due to all operators and employés, and amounts due for supplies and materials furnished and used and unpaid pay rolls, and supply accounts incurred in the operation of said railroad system since June 30, 1907." Interveners contend that they are of that class of attorneys who were "employés" of the Seaboard Air Line Railway, as that term is used in the order.

The policy and the right of providing for the payment of amounts due in the current operation of the property of a railroad in which a receiver is appointed is so well settled that a discussion of the principle is unnecessary. Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; Miltenberger v. Railway Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117; Trust Company v. Souther, 107 U. S. 591, 2 Sup. Ct. 295, 27 L. Ed. 488; Burnham v. Bowen, 111 U. S. 783, 4 Sup. Ct. 675, 28 L. Ed. 596; Union Trust Co. v. Ill. M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963; Trust Company v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004, 31 L. Ed. 825; Virginia & A. Coal Co. v. Central R. R. & Banking Co., 170 U. S. 355, 18 Sup. Ct. 657, 42 L. Ed. 1068; Southern Railway v. Carnegie Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458; Rodger Ballast Co. v. Omaha R. R. Co., 154 Fed. 629, 83 C. C. A. 403; Lackawanna, etc., Co. v. Farmers' Loan, etc., Co., 176 U. S. 298, 20 Sup. Ct. 363, 44 L. Ed. 475.

One of the questions before me is: "Was it the intention of the court to include in the preferred class the claims of attorneys at law?" An examination of the words of the order will throw some light on the matter. "All amounts due to operators and employés * * * and unpaid pay rolls." Counsel for receivers seemed to be under the impression that the word "operatives" had been used by the court in the order, but an examination of the original order shows it to be "operators." If the ordinary meaning of words is to be taken as the rule, it would seem that the word "operators" is of more extensive significance than "operatives." The several dictionaries seem to agree that an "operator" is "one who operates or produces an effect," while an "operative" is "a skilled workman, an artisan, or mechanic." This would indicate that the order was intended to embrace officers, as well as what is generally known as the "laboring class." Now, the word "employés" is used in conjunction with "operators." Applying the rule of construction, "noscitur a sociis," invoked by receivers' counsel, I am constrained to conclude that it gives the word "employés" a broader application than might have otherwise been true if "operatives" had been used. In this same connection are used the words "all amounts due," instead of "wages" or "salaries," which might operate as a limitation, and they seem to give emphasis to the broader construction contended for, while the words following, "unpaid pay rolls," implying that there may be operators and employés not on the regular pay rolls, have the same effect. Construing the words of the order together, I cannot escape the conclusion that the wording of the order is broad enough to include attorneys regularly employed.

It now becomes necessary to inquire into the nature and character of the services rendered by interveners as counsel or attorneys. The facts set out in their intervention and the amendments thereto are admitted by counsel for receivers. They have been substantially stated above in the "findings of fact." The circular letter of the general counsel of date January 31, 1903, announ-

ing the appointment of John P. Tillman as division counsel of the Seaboard Air Line Railway in Alabama, contains the following: "Mr. Tillman will have charge of all litigation and other legal matters in the state of Alabama to which the Seaboard Air Line Railway may be a party or in which it may be interested. He will appoint local counsel in said territory as he may think necessary, subject to the approval of the general counsel. All local counsel will attend to such business as may be assigned to them by the division counsel, to whom they will report." This is admitted to apply to Brown & Randolph in their territory. This circular letter seems to me to be conclusive of the nature of the services contemplated. They were to have charge of all litigation and other legal matters in the territory comprising their division. This cannot mean that in every case they would be specially employed, but the arrangement covered all cases and all legal matters. There was no limit to the nature or character of the business that they were to perform for the company in the territory comprising their division, and the term of their employment was not limited.

Counsel for receivers argued that, if employment in one case did not make them employés, employment in two or three or ten or twenty would not constitute the relation. That is granted; but employment in all matters in a given territory for an unlimited time would certainly, to my mind, negative the idea of special employment, and constitute them regular employés of the legal department. Assuredly the character of such an employment is continuing in its nature. It was accomplished by one act and contract, namely, the appointment and not by several acts, several contracts, done or made as the services were required. Furthermore, an attorney specially employed in one or two or three or twenty cases, even, would hardly be designated as "Division Counsel." The title itself denotes continuity of service.

The duties of an attorney as division counsel, who was paid a salary, are in evidence, and a comparison of his duties and those of interveners shows no difference. It seems that exactly the same circulars instructing this counsel were sent to interveners for their guidance. The duties and obligations were the same. They were subject to the same calls and the same directions, and the relations could be terminated only in the same way. Interveners could not accept any business against the Seaboard Air Line Railway, any more than could the salaried counsel, and in no way can a difference be detected, save in the manner of compensation for services rendered. It is also in evidence that annual passes on the Seaboard Air Line Railway system were issued to interveners, account "Division Counsel," and interchange passes on other lines were furnished them at the request of the Seaboard Air Line Railway on same account. This would indicate that the authorities of the Seaboard Air Line Railway certainly considered them as regularly employed attorneys, or they would scarcely have taken the chances of violating a federal enactment on which public attention has been largely centered for no inconsiderable time. It would, indeed, be a striking illustration of the irony of fate if interveners and a large number of other distinguished counsel were not only held not to be within the privileged class created by the order of the court, thereby depriving them of the hope of receiving any compensation for services rendered, but who, in addition, might be subjected to the penalties of the law for accepting and using transportation without being within the class who could lawfully use same.

The fee system seems to have been adopted by the law department of the Seaboard Air Line Railway, except in a few instances, where salaries were paid. In other words, a fee was paid for each case after the termination of the matter. Counsel made up accounts at certain times, showing amount of fee claimed for each matter in which services were rendered, and same was submitted to the general counsel for his approval, and, when approved by him, voucher was issued by the treasurer of the railway. I cannot see that this method of compensation in any way changes the character of the employment.

Several cases in the Federal Reporter and in the United States Supreme Court Reports have been cited by counsel on both sides as sustaining their position. The case of Louisville & E. R. R. Co. v. Wilson, 138 U. S. 501, 11 Sup. Ct. 405, 34 L. Ed. 1023, is cited with confidence by both sides. That seems to be a case where the attorney was employed for a special service, and

Justice Brewer, in discussing the same, significantly says that the appellant "does not sue for services as general counsel of the mortgagor company, or for salary as an officer of that company," and, after referring to the case of Gurney v. Atlantic & Great Western Railway Co., 58 N. Y. 358, in which an order directing the receiver of a railroad thereby appointed to pay debts "owing to the laborers and employés" for labor and services, was held broad enough to include a debt due to Hon. Jeremiah C. Black for professional services as counsel, and expressly refraining from criticising that decision, says:

"We are of the opinion that the term 'wages of employés,' as used in the order now under consideration, does not include the services of counsel employed for special purposes." He then says "that the terms 'officers' and 'employés,' both alike, refer to those in regular and continual service. Within the ordinary acceptation of the terms, one who is engaged to render service in a particular transaction is neither an officer nor an employé. They imply a continuity of service, and exclude those employed for a special and single transaction. An attorney of an individual retained for a single suit is not his employé. * * * His engagement is rather that of a contractor than that of an employé." It was therefore held that the services did not come within the order appointing the receiver.

It seems to me that the implication in this decision is this: Had the claimant been a regularly employed attorney, the court would have held that he came within the privileged class, and this seems to have been the view taken by Judge Simonton when, in the case of Finance Company, etc., v. Charleston, etc., R. Co. (C. C.) 52 Fed. 526, he held that an attorney regularly employed under a fixed salary came within the order of the court appointing the receiver, because the order provided that the "wages due employés" should be paid, and cites the case of Railroad Company v. Wilson. I do not think the other case of Finance Company v. Charleston, etc., R. Co. (C. C.) 52 Fed. 678, throws any particular light on the matter under consideration. In the case of Blair, Trustee, v. St. Louis, H. & K. R. Co. (C. C.) 23 Fed. 523, Judge Brewer, then Circuit Court Judge, now justice of the Supreme Court, in his opinion held that the claim of an attorney on a salary was entitled to priority over that of the mortgage bondholders. It was insisted in that case that the services of an attorney were not necessary in the operation of a railroad. Judge Brewer says: "I think that whatever is necessary in the ordinary administration of the affairs of the corporation comes within the spirit of the decisions of the Supreme Court, and that an attorney's services are thus necessary is very clear." I cannot agree with the view of the distinguished counsel for the receivers, who argued this case before me, in comparing this case to the Wilson Case, that Justice Brewer, of the Supreme Court, sees the matter differently from Judge Brewer of the Circuit Court. It seems to me that there is no conflict in the views expressed in the two cases.

It is evident, from the testimony here presented, that the construction put on the order in this case appointing receivers, by the receivers, is that it includes attorneys regularly retained on salaries, and properly so, I believe, and I cannot think it was the intention of the court to make a discrimination of the kind contended for "between attorneys in the same service, occupying the same relations, charged with the same duties, and clothed with the same powers"; the only difference being the mode of compensation.

I therefore find that the said Brown & Randolph were regularly employed attorneys of the Seaboard Air Line Railway in the territory named, with the title of "Division Counsel," and that their services as such division counsel were necessary to the operation of the property and contributed to keeping the railway a "going concern."

I find, further, that the indebtedness of the railway, therefor is a current debt, arising in the ordinary course of the business of the company, and that it was included in the terms and provisions of the decree of January 2, 1908, which provides for the payment by the receivers of all amounts due to operators and employés, and amounts due for supplies and materials purchased and used, and unpaid pay rolls and supply accounts incurred in the operation of said railway system since June 30, 1907, and as such is entitled to the preference provided in said order.

As to the claim of interveners that this indebtedness is entitled to a priority over the mortgages, independent of the order of January 2, 1908, the special master is of the opinion that it is not within his province to decide. It has been suggested that the special master has the privilege to recommend to the court; but the court could have ordered the special master to do so, in the decree appointing him, if he had no desired. Since this has not been done, I will not assume the responsibility.

L. L. Lewis, for receivers.
Brown & Randolph, pro se.

PARDEE, Circuit Judge. This cause came on to be further heard upon the interventions of Brown & Randolph, Cobb & Erwin, Goetchius & Chappell, Tom Eason, Crovatt & Whitfield, E. A. Hawkins, J. B. Geoger, Janes & Hutchens, Neel & Peeples, Thomas F. Walsh, Jr., and G. R. Hutchens, and upon the master's reports thereon and the exceptions thereto, whereupon it is considered that the exceptions are not well taken and are overruled. It is thereupon ordered that the said exceptions be and they are overruled, and the master's reports be and they are in all respects confirmed; and, it appearing that the services for which the interveners claim the compensation allowed by the master were within the terms and meaning of the order appointing receivers in this cause and entitled to be paid under the said order, it is further ordered that the receivers do pay the amounts, with interest, as allowed and approved in the master's reports.