FREDERICK A. BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29456. Promulgated March 5, 1931.

*Thomas P. Dudley, Esq.,* for the petitioner.
*C. A. Ray, Esq.,* for the respondent.

OPINION.

PHILLIPS: The only issue before us is whether the respondent erred in including in gross income for the taxable year 1923 the sum of $25,750, representing compensation received by the petitioner for services as Special Assistant Attorney General of the State of Illinois. The petitioner urges that he was an employee within the

meaning of section 1211 of the Revenue Act of 1926. This section provides as follows:

Any taxes imposed by the Revenue Act of 1924 or prior revenue acts upon any individual in respect of amounts received by him as compensation for personal services as an officer or employee of any State or political subdivision thereof (except to the extent that such compensation is paid by the United States Government directly or indirectly), shall, subject to the statutory period of limitations properly applicable thereto, be abated, credited, or refunded.

The position of the respondent is that petitioner was an independent contractor and not an officer or employee of the State of Illinois or a political subdivision thereof, and that the compensation received by him from Cook County is not exempt from taxation.

In November, 1922, the Attorney General of the State of Illinois undertook the grand jury investigation of certain activities of the Board of Education of the city of Chicago. In taking over and prosecuting this investigation he acted in his official capacity and for the sovereign State of Illinois.

It appears from the record that petitioner was regularly appointed by the Attorney General of Illinois as Special Assistant Attorney General and assigned to the grand jury investigations in the city of Chicago. He was paid for his services by Cook County. As a condition of his appointment it was stipulated by the Attorney General that he give his entire time to the work. He accepted this condition, closed out his private practice, released his secretary and assistant, moved from his office into offices provided by the Attorney General, assumed charge of the grand jury investigation and thereafter, and during the taxable year, gave his entire time to his duties as Special Assistant Attorney General. On the two occasions when he appeared in court in a private case it was necessary for him to obtain the consent of the Attorney General.

He was not appointed for any definite period nor required to accomplish any definite result—his term of service was at the will of the Attorney General. His work was performed in offices provided by the Attorney General, whose name appeared on the office door. He was required to give up his private practice and devote his entire time to the public service. Among his other duties he was charged with the supervision of the office personnel working in connection with the investigation and signed the vouchers for the pay of employees. The stenographers and the office manager were appointed by him. In addition to his duties of directing the investigation and procuring witnesses he examined witnesses before the grand jury and was in the grand jury room when witnesses were examined, supervised the drawing of indictments and prosecuted cases in the court resulting from indictments or contempt proceedings.

All his duties were in connection with the enforcement of the criminal laws of the State of Illinois, and at all times he was under the direction and control of the Attorney General of the State, whose opinion was final on all matters concerning the investigation. While engaged upon the investigation of the Board of Education petitioner was requested by the Attorney General to take up what was known as the City Hall investigation. The duties performed by him in this connection were similar to those performed in the investigation of the Board of Education. As a result of these investigations numerous indictments were returned by the grand jury.

In cases heretofore considered by us we have held that, where a lawyer undertakes for a State or political subdivision thereof to accomplish a single result in line with his regular profession and at the same time continues to carry on the regular practice of his profession, he is merely taking on an additional client. *David A. Reed*, 13 B. T. A. 513, affirmed by the Supreme Court, 281 U. S. 699, and we have quoted with approval the language of the Court in *Louisville, Evansville & St. Louis R. R. Co.* v. *Wilson*, 138 U. S. 501, to the effect that, "An attorney of an individual, employed for a single suit, is not his employee. It is true he was engaged to render services; but his engagement is rather that of a contractor than that of an employee"; but where an attorney has agreed to regularly render services to a State or its political subdivision and was at the command of his employer, who had first and unlimited right to his time regardless of result, we have held him to be an employee. *Howard S. Young*, 16 B. T. A. 1428; *John E. Mathews*, 8 B. T. A. 209, affirmed on this point in *Blair* v. *Mathews*, 29 Fed. (2d) 892; *Seaboard Airline Ry.* v. *Continental Trust Co.*, 166 Fed. 597.

The case of petitioner is not " equally applicable to private citizens engaged in the general practice of a profession or the conduct of a business *in the course of which* they enter into contracts with a government from which they derive a profit," see *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514. It is a case where the attorney gives up his private practice, abandons his office, dismisses his employees, moves into an office provided by the government and devotes his entire time to duties assigned to him by the Attorney General, who directs and controls his activities. Services so rendered are not merely incidental to the general practice of a profession, they supersede it and are substituted for it and the relation thus established is not that of attorney and client, but that of employer and employee. There is lacking that freedom from direction and control, and responsibility for result, which characterizes an independent contractor.

It was not in his individual or private capacity that petitioner performed the duties devolving upon him as Assistant Attorney General; he acted for the State of Illinois in the execution of its criminal laws and his authority was derived therefrom. Under no other theory could he have represented the State in the proceedings before the grand jury and have appeared before that body in the role of prosecutor and adviser. He was an instrumentality of the State in performing an essential governmental function and as such a tax on his salary would constitute a burden on the State in the exercise of that function.

It has been consistently held from the first decisions that the Federal and State Governments, respectively, are mutually, equally and wholly exempt from any taxation by the other which rests any burden whatsoever on the exercise of their respective sovereign functions. *McCulloch* v. *Maryland*, 4 Wheat. 316; *Collector* v. *Day*, 11 Wall. 113; *Dobbins* v. *Commissioners of Erie County*, 16 Pet. 435; *United States* v. *Railroad Co.*, 17 Wall. 322; *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429; *Metcalf & Eddy* v. *Mitchell, supra.* In *United States* v. *Railroad Co., supra,* the Court used this language:

> The right of the States to administer their own affairs through their legislative, executive, and judicial departments, in their own manner through their own agencies, is conceded by the uniform decisions of this court and by the practice of the Federal Government from its organization. This carries with it an exemption of those agencies and instruments, from the taxing power of the Federal Government. If they may be taxed lightly, they may be taxed heavily; if justly, oppressively. Their operation may be impeded and may be destroyed, if any interference is permitted. Hence, the beginning of such taxation is not allowed on the one side, is not claimed on the other.

There may be fundamental differences in the type of agents selected by the sovereign to perform its sovereign function. It may elect to carry on through those who are under its supervision and control, who become a part of the personnel through whom it administers its governmental functions; or it may select an agent who undertakes to do certain work or accomplish a certain result as part of a business carried on by the agent. We need not consider when, if ever, the exemption of the sovereign from taxation may be said to attach to the latter class. While the line of demarkation can not be clearly drawn, it is our opinion that the present petitioner falls within the first class and is properly to be considered as an employee of the State engaged in the performance of a governmental function. The distinction between this case and such cases as *David A. Reed, supra,* affd., 281 U. S. 699, and *Charles M. Haft,* 20 B. T. A. 431, lies in the fact that this petitioner was required to give up his private business and devote his entire time and attention for an

indefinite time to the service of the State under the supervision and control of its chief legal officer. In such circumstances it can not be said that the work done for the State was undertaken as a part of a private business carried on by petitioner, for the State had required abandonment of the private business.

Reviewed by the Board.

*Decision will be entered for the petitioner.*