F. J. CARMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 44321, 44939, 50178. Promulgated January 13, 1932.

*Earl W. Shinn, Esq.*, and *J. L. O'Connor, Esq.*, for the petitioner.
*Maxwell E. McDowell, Esq.*, and *Frank B. Schlosser, Esq.*, for the respondent.

167

**OPINION.**

McMahon: The petitioner having abandoned his assignment of error in Docket No. 44321 regarding the refusal of the respondent to allow as deductions certain expenses incurred in the drilling of oil wells and other development, there remains for determination only the question of whether the items of income set forth in our findings of fact are taxable in their entirety to the petitioner, or whether he is taxable upon only one-half of each of such items. The respondent held that the property from which the income was produced was community property and that the income therefrom is also community property and taxable to the husband in its entirety, relying upon *United States* v. *Robbins*, 269 U. S. 315. The petitioner denies that the property was community property and contends that petitioner's wife, Elna Carman, had a present existing and vested

ownership in such property and that petitioner is taxable upon only one-half of the income in question.

The Civil Code of California which was in effect in the years in question provides in part as follows:

§161. May be joint tenants, etc. A husband and wife may hold property as joint tenants, tenants in common, or as community property.

§162. Separate property of the wife. All property of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is her separate property. The wife may, without the consent of her husband, convey her separate property.

§163. Separate property of the husband. All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property.

§164. Community property. All other property acquired after marriage by either husband or wife, or both, including real property situated in this state, and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state, is community property; but whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property.

Conveyance of real property to and by married women. And in case the conveyance is to such married woman and to her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her, as tenant in common, unless a different intention is expressed in the instrument, and the presumption in this section mentioned is conclusive in favor of a purchaser or encumbrancer in good faith and for a valuable consideration.

\* \* \* \* \* \* \*

On April 28, 1927, section 161, *supra*, was amended by the enactment of section 161 (a), which provides as follows:

Interests in community property. The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in community property. [New section added April 28, 1927; Stats. 1927, p. 484.]

In *United States* v. *Malcolm*, 282 U. S. 792, the Supreme Court held that under section 161(a), *supra*, the wife has such an interest in the community income that she should separately report and pay tax on one-half of such income, citing *Poe* v. *Seaborn*, 282 U. S. 101; *Goodell* v. *Koch*, 282 U. S. 118; and *Hopkins* v. *Bacon*, 282 U. S. 122.

Section 161(a), *supra*, does not affect property acquired prior to its enactment. *Paul F. Hill et al., Executors*, 24 B. T. A. 1144. In the instant proceeding the income was derived prior to the passage of section 161(a), *supra*, and if it was community income it is

taxable in its entirety to petitioner, since petitioner's wife did not have a vested interest therein. *United States* v. *Robbins et al., supra.* But if the petitioner's wife did have a vested property right in such income, it is clear, under the decision in *United States* v. *Malcolm, supra,* and cases cited therein, that she should report and pay tax on that portion which she owned and that the petitioner should not be required to report and pay tax on such portion.

The income involved in the instant proceeding was derived from various sources and we will discuss the various items of income separately.

Prior to the taxable years in question the petitioner owned as separate property a one-half interest in the Carman Property, located in California. He also owned a one-half interest in a contract between himself and Fairbank, on the one hand, and Standard Oil Company, on the other, under which he was to receive one-fourth of the total profits derived from the oil development of this property. On December 20, 1921, petitioner conveyed to his wife by deed a one-half interest in his half interest in the Carman Property and on the same date transferred to his wife a one-half interest in his interest in the agreement with the Standard Oil Company. During the years 1924, 1925 and 1926, taxable income was derived by petitioner or by petitioner and his wife from the sales of oil from the Carman Property in the respective amounts of $16,918.64, $30,274.64 and $43,853.18.

As will be noted, section 164 of the Civil Code of California provides that whenever any property is conveyed to a married woman by an instrument in writing the presumption is that the title is vested in her as her separate property. In California a husband may convey real or personal property to his wife, and whether the property be his separate property or community property, the presumption is that it thereby becomes, and is thereafter to be treated as, her separate property. *Carter* v. *McQuade*, 86 Cal. 274; 23 Pac. 348, and cases cited therein. See also *Flournoy* v. *Flournoy*, 86 Cal. 286; 24 Pac. 1012. There is a presumption, therefore, under the statutes of California, that petitioner's wife, Elna Carman, was during the years in question vested with title to one-fourth of the property rights in the Carman Property itself and was also vested with title to an interest equal to that of her husband in the contract with the Standard Oil Company as her separate property. There is nothing in the record to rebut this presumption. On the contrary the presumption is fortified by the agreement entered into by petitioner and his wife at the time of their marriage and described in our findings of fact. We conclude that the interests in question became the separate property of petitioner's wife. The income therefrom was also separate prop-

erty of petitioner's wife. Section 162 of the Civil Code of California, *supra*.

Furthermore, it will be observed that this section provides that all property of the wife acquired by her after her marriage by gift is her separate property. Were we to consider this a gift from petitioner to his wife, we would have to conclude that the interest of the wife became her separate property.

We hold that one-half of the income in question from the Carman Property was income belonging to the wife and taxable to her, and that the respondent erred in taxing any more than one-half of the amounts in question to petitioner.

We next turn to a discussion of the income derived by petitioner or by petitioner and his wife by way of dividends upon corporate stock. The evidence discloses that such dividends amounted to $18,075 in 1925 and $30,300 in 1926. In order to determine how this stock was owned it is necessary to enter into a brief resume of the facts, showing the sources of the funds with which such stocks were purchased.

At the time of their marriage petitioner and wife agreed that they would each pool their separate liquid assets, the exact amount of which is not shown, and that they would invest such funds and share equally in the ownership of the property purchased and the income derived therefrom. The separate property of the husband and wife before marriage continues to be the separate property of each after marriage and the rents, profits and issues thereof are also the separate property of each. Sections 162 and 163 of the Civil Code of California. These funds were placed in a joint bank account immediately following the marriage. With these funds the petitioner obtained oil and gas leases in Ontario, Canada, and transferred them to the Ontario Petroleum Company, which was organized to hold them. and received capital stock in exchange therefor. In 1917 and 1918 petitioner, in accordance with the agreement with his wife, transferred enough stock in this corporation to her to equalize their holdings therein. This action of the petitioner was sufficient to render this stock the separate property of petitioner's wife, as shown above in the discussion with regard to the income from the Carman Property.

Petitioner and his wife opened a joint bank account in a bank in Ontario, Canada, and there were deposited therein in 1920 the amount of $28,692.93, dividends received by Mrs. Carman from her Ontario Petroleum Company stock, and the amount of $8,197.98, dividends received by petitioner from such stock.

In 1920 petitioner and his wife opened a joint bank account with the Harriman National Bank in New York City and there were transferred thereto whatever funds petitioner and his wife had in the joint bank account in Canada.

In 1919 the petitioner had received as his separate property $50,000 bonus from the Standard Oil Company and had received in 1920 as his separate property the amount of $128,000 as profits upon the operations of the Carman Property. In the year 1921 he received an amount in excess of the amount received in 1920 from this source. These funds were deposited in the joint bank account in the Harriman National Bank. Out of these funds, petitioner purchased $70,000 worth of Liberty bonds which he transferred to his wife to carry out their agreement to own equally all profits from various investments. These bonds became her separate property. In or after 1921, the Harriman National Bank purchased various securities and charged the amount against the joint bank account. Most of these securities were taken in the joint names of petitioner and his wife. As has been pointed out above, after 1921 the income from the Carman Property was the separate property of petitioner and his wife in equal amounts. All this income was deposited in the Harriman National Bank in the joint bank account. The Liberty bonds belonging to Elna Carman were transferred to the bank and the interest thereon was collected by the bank and credited to the joint bank account.

In 1922 petitioner and his wife opened a joint account with Harriman & Company, stock brokers in New York, and the stock which had been purchased by the Harriman National Bank and the Liberty bonds belonging to Elna Carman were transferred to the brokerage company. The Liberty bonds were sold by the brokers in 1922 and the proceeds were credited to the joint account with the brokerage company. The petitioner and his wife always consulted about the purchase of stocks and a considerable number of lots of stock have been purchased through Harriman & Company, brokers. Some of this stock was issued in the name of F. J. and Elna Carman and some of it was carried in the name of Harriman & Company, to be used as collateral security.

It is our opinion that the evidence shows that the joint bank account with the Harriman National Bank and the stock trading account with Harriman and Company, brokers, were created and the securities were purchased with separate funds of the petitioner and his wife. Each contributed to these accounts in substantial amounts from their separate property, and there is no evidence to show that any community property was contributed thereto or that any stock was purchased with community property. Apparently all of the funds in the joint bank account, and those used to purchase stocks consisted of separate property or issues and profits thereof which, in turn, became separate property. As was pointed out in *Paul F. Hill et al., supra,* property received in exchange for or purchased by separate property is also separate property.

*In re Pepper's Estate*, 158 Cal. 619; 112 Pac. 62, the Supreme Court of California stated in part:

\* \* \* There are to be found, in many of the decisions of this court, expressions to the effect that the separate character of property acquired by either of the spouse after marriage is to be established only by "clear and convincing evidence," "clear and decisive proof," or the like. [Citing *Meyer* v. *Kinzer*, 12 Cal. 247, and other California cases.] But, as is said in *Freese* v. *Hib. S. & L. Soc.*, 139 Cal. 392, 73 Pac. 172, "it was never intended by this court to lay down a rule requiring demonstration in such matters; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty, Code Civ. Proc. §1826. Such proof is never required. Generally, moral certainty only is required, or that degree of proof which produces conviction in an unprejudiced mind, and evidence which ordinarily produces such conviction is satisfactory." Code Civ. Proc. §§1826, 1835. And, in speaking of a similar question in *Couts* v. *Winston*, 153 Cal. 686, 96 Pac. 357, we said that "whether or not the evidence offered \* \* \* is clear and convincing is a question for the trial court. \* \* \* In such cases, as in others, the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review in this court."

Apparently neither petitioner nor his wife was regularly employed except in the business of investing in securities, and so far as the record discloses neither earned income which became community property. However, even if an inconsiderable amount of community funds did become confused with the separate funds used in the purchase of securities, such community funds took on the character of the separate funds, the larger estate. *John H. Flach*, 13 B. T. A. 383. See also *Francis Krull*, 10 B. T. A. 1096.

Considering the whole record, it is our opinion that the stocks were owned by petitioner and his wife together equally as separate property and not as community property, and that the income therefrom belonged to each in equal proportions as their separate property. It follows that only one-half of such income is taxable to petitioner. The respondent erred in taxing more than one-half of such income to the petitioner. *Francis Krull*, *supra*, and *Hewlings Mumper*, 13 B. T. A. 977.

For the same reasons enumerated above, we hold that only one-half of the profit of $31,681.54 derived from the sale of the Louisiana oil stock in the year 1925, that only one-half of the amount of $26,151.48 profits derived from the sale of Lago Petroleum Company stock in 1925, and that only one-half of the amounts of $6.52 and $156.12, representing interest received on joint bank deposits in the years 1925 and 1926, respectively, constitute income taxable to the petitioner.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*