*183 OPINION.
Smith :
The only question to be determined in this proceeding is whether the income received by the petitioner and his wife from certain joint investments in 1924 and 1925 is taxable in its entirety to the petitioner as community income under the laws of the State of California, or whether one half of such income is taxable to the petitioner’s wife as her separate income.
Under the law of the State of California, as it existed prior to enactment of section 161 (a) of the California Civil Code (enacted April 28,1927), all property acquired after marriage by either spouse constitutes community property except that acquired by gift, bequest, devise, or descent. California Civil Code, secs. 161-164. Likewise, the income from such property constitutes community income for which the husband is liable in respect to the Federal income tax. United States v. Robbins, 269 U.S. 815; Blair v. Roth, 22 Fed. (2d) 982. Section 161 (a) of the California Civil Code, which gives to the wife “ present, existing and equal interests ” in community property during continuance of marriage relations, and renders her liable for the Federal income tax on her separate share of the community income, United States v. Malcolm, 282 U.S. 792, does not apply to property acquired prior to its enactment or affect the taxability of the income therefrom to the husband. Paul F. Hill et al., Executors, 24 B.T.A. 1144; F. J. Carman, 25 B.T.A. 162.
As the respondent concedes, however, the respective interests of the husband and wife in community property and likewise commu *184 nity income, with certain limitations as set forth in Lucas v. Earl, 281 U.S. 111, are subject to change by contract between the husband and wife. Kaltschmidt v. Weber, 145 Cal. 596; 179 Pac. 272; Wren v. Wren, 100 Cal. 276; 34 Pac. 775; Larson v. London, 15 Cal. Ap. 531; 15 Pac. 340; Smith v. Smith, 47 Cal. Ap. 650; 191 Pac. 60; Francis Krull, 10 B.T.A. 1096; W. A. Roth, 22 B.T.A. 587; Blair v. Roth, supra. If the wife has a vested interest in the community property separate from that of her husband, the income therefrom is taxable to her in her separate returns. Poe v. Seaborn, 282 U.S. 101.
Was there such a contract between the petitioner and his wife and did the wife in 1924 and 1925 have a separate vested one-half interest in the property from which the income in dispute was to arise ?
Much of the evidence adduced by the petitioner was directed towards proving that his wife contributed equally with him to their joint earnings after marriage, including the $10,000 fee for negotiating the real estate sale in 1916, the salary and profits from the operation of the hotel, and the income from all other sources. Assuming that to be true, however, these earnings and the property acquired therewith might nevertheless belong to the community, for, as we have said above, under the laws of the State of California, all the property acquired after marriage by either spouse prior to the enactment of section 161 (a) of the California Civil Code is presumed to be community property except that acquired by gift, bequest, devise, or descent. Of the $13,200 invested in the real estate lots in 1916, $3,200 was received by the petitioner’s wife as a gift from her father and was therefore not community income. The evidence is to the effect that the petitioner’s wife received approximately $20,000 from this source after her marriage to the petitioner. However, these funds were commingled with their other earnings and investments so that their identity was lost. See Pedder v. Commissioner, 60 Fed. (2d) 866; John H. Flach, 13 B.T.A. 383.
The petitioner and his wife both testified that there was an oral agreement between them that they should each own a separate one-half interest in all of their income and property. They testified that there was such an agreement with respect to the $10,000 fee received from the real estate sale in 1916, the salary and profits from the operation of the hotel during the years 1919 to 1923, inclusive, and all of their investments made with these and other funds. There is no written evidence of such an agreement with respect to any of their property prior to September 5, 1923, which is the date of the above letter from the petitioner to his wife regarding their investment in the Janss Investment Co. and Charles H. Christie real estate ventures. This letter does not purport to be, nor can it *185 be construed as, a valid assignment by the petitioner to his wife of any interest in these investments. It contains the statement:
I [the petitioner] understand from you that you agree to these transactions and agree to payment of your proportion of the cash payments from any funds now held jointly by us, and that you assume liability for your proportion of future payments, such liability to attach to your separate funds as well as those held jointly by us.
It is not shown to which joint funds or separate funds of his wife the petitioner referred. The letter is not signed by the petitioner’s wife and was not executed as an agreement. We think that it has but little, if any, probative value.
The deeds to the five real estate lots purchased in 1916 were taken in petitioner’s name and so remained until May 1932, just prior to the hearing of this proceeding, which was on June 14, 1932, when they were changed to show the petitioner’s wife the owner of .a one-half interest in the property. Likewise, the investments in the real estate syndicates were recorded in the petitioner’s name. The formally executed agreement defining the separate interests of the petitioner and his wife in all of their property, which is set out in part above, was not executed until June 8,1932. This agreement, of course, has no retroactive effect and does not change the status of the income of the petitioner and his wife for the taxable years 1924 and 1925. W. A. Roth, 17 B.T.A. 1330.
The facts in this case are hardly distinguishable from those in Blair v. Roth, supra, in which the court held, reversing the Board, that notwithstanding an oral agreement between husband and wife that the earnings of both should be contributed to a common fund and that the surplus thereof, after payment of their personal and community expenses, should belong to them on an equal footing, the earnings of both spouses constituted “ community income ” taxable to the husband. In its opinion, the court said:
* * * There was no writing, and the testimony of appellee and his wife, much of which was elicitated by highly leading questions, was to the effect that, shortly after their marriage, they had an understanding, not that the earnings of each should constitute the separate property of the earner, but that the earnings of both should be contributed to a common fund, of which they were to be the owners, share and share alike. They referred to themselves as equal partners in all they had or should acquire, jointly or severally.
** + $##*
* * * As exemplified in actual practice, the agreement of the appellee and his wife amounted to substantially this: They would contribute their earnings to a common fund, out of which their personal and community expenses would be paid, and of the savings, if any, and the property in which such savings were invested, they were to be the owners upon an equal footing. By the appellant it is not contended that, under the California statutes (sections 159, 160, Civ. Code; Wren v. Wren, 100 Cal. 276, 34 P. 775, 38 Am. St. Rep. 287; Kaltschmidt *186 v. Weber, 145 Cal. 596; 179 P. 272; Smith v. Smith, 47 Cal. App. 650, 191 P. 60; Perkins v. Sunset T. & T. Co., 155 Cal. 712, 103 P. 190), a husband and wife domiciled in that state may not make valid agreements relating to either their separate or their community property, or that it would be incompetent, by appropriate agreement between them, to constitute the earnings of the wife her separate estate. In essence his contention is that, at most, the agreement here was for an assignment by each of the parties of one-half of his or her earnings to the other; that, at the instant they were received, the salaries were, by the law, impressed with the status of community property, and were taxable with reference to that status; and that the obligation to pay the tax so computed could not be escaped by contributing such incomes to the so-called partnership between the two members of the community, any more effectually than by contributing it to a like enterprise as between one member of the community and a third person. In this view we concur.
The petitioner herein testified, upon interrogation by his counsel, as follows:
Q. Did you have an agreement in advance as to how the commission was to be split?
A. Yes, sir. When we got the commission we agreed to go fifty-fifty.
Q. She was to have half as her separate property?
A. Yes, sir.
# * * * * * *
Q. At the time you purchased those lots [the five vacant lots purchased in 1916] there was a definite agreement with Mrs. Anderson how the property interest was to be?
A. She had a one-half interest and I owned the other half.
Q. How were the deeds taken?
A. The deeds?
Q. To whom?
A. In my name.
Q. She knew that?
A. No, she didn’t know until three or four weeks ago.
* * * # * ❖ *
Q. You.had an arrangement with Mrs. Anderson as to how the' profits and salary [from the operation of the hotel] would be divided?
A. She made the arrangement with mother.
Q. Did you have an arrangement with your wife?
A. When I came home, yes.
Q. What arrangement did you make with your wife?
A. She was to work with me, I was to have half and she was to have half,
Q. As separate property?
A. As her own money.
❖ * * * * * *
Q. You bought other real estate?
A. Bought and sold.
Q. As I understand the situation, the title to the various lots were taken in your name?
A. Yes, sir.
Q. Did Mrs. Anderson know it?
A. She didn’t know until about two weeks ago.
* í¡s s¡« >¡! #
Q. So that every investment you made was a joint agreement?
A. Yes, sir.
*187 Q. was there any agreement between you and Mrs. Anderson as to how the property was to be held, that is, whether she had any interest?
A. She understood she had a half interest.
Q. A half interest in each property?
A. Everything I had or we acquired between us.
In Pedder v. Commissioner, supra, the Circuit Court of Appeals for the Ninth Circuit held, affirming the Board, upon facts similar to those in the instant case and those in Blair v. Roth, supra, that the presumption of the law of the State of California in favor of community property was not overcome. See also W. A. Roth, 22 B.T.A. 581, in which the Board, also under similar facts, followed Blair v. Roth, supra.
Aside from the presumption of law which, as we have said, operates in favor of the respondent’s contention that the income in question was community income, the very nature of the question here calls for the strictest proof on the petitioner’s part. Where, as in the instant case, the written records and the acts of the husband and wife for a number of years indicate that, either ill-advisedly or without knowing the result upon their tax liability, they have submitted to the community property rule of their state, they should not be permitted to avoid the legal consequences of that rule merely upon their own testimony that they had previously entered into an oral agreement between themselves by which their property rights must be determined upon some other than the community property basis. We can not escape the conviction, that this is the tenor of the cases in which the courts have considered this question.
Upon the evidence before us, we are not convinced of the existence of any valid enforceable agreement between the petitioner and his wife, prior to the written agreement executed on June 8, 1932, that their income and property should be owned by them otherwise than “ on an equal footing ” as in Blair v. Roth, supra. We are therefore of the opinion that the petitioner has not overcome the presumption of the correctness of the respondent’s determination that the income in question for the years 1924 and 1925 was community income taxable to the petitioner.
Reviewed by the Board.

Judgment will be entered for the respondent.

Goodrich,
dissenting: I disagree with the majority opinion, for the evidence herein convinces me that a contract existed between petitioner and his wife under which each acquired and held, as tenants in common, a separate one-half interest in these properties, and, consequently, the income therefrom should be taxed, one half separately to each of them.
Lansdon and Black agree with this dissent.