EDITH PAGE SKEWES-COX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61669, 68335. Promulgated October 26, 1933.

*Virgil Y. Moore, Esq.,* for the petitioner.
*Dean P. Kimball, Esq.,* for the respondent.

#### OPINION.

Murdock: The Commissioner determined deficiencies in the petitioner's income taxes of $509.22 and $220.21 for the years 1928 and 1930, respectively. The only question is whether or not the Commissioner erred in including in this petitioner's income one half of her husband's salary. The facts before us were stipulated.

The petitioner is an individual, residing in San Francisco, California. She was born in Chile and was married there in 1915 to Vernon Skewes-Cox, a British subject then engaged in business in Chile. Just prior to their marriage they entered into an antenuptial agreement in accordance with the laws of Chile. This agreement has never been annulled. The agreement provides:

Both parties declare that it is their wish to be married under the law of separation of properties. Consequently each of the parties will administer with complete independence of the other all the properties which he or she now possesses or which he or she may by any kind of title acquire during the marriage.

The agreement also contains declarations by the parties of the property owned by each at the time of its execution, which are, in substance, that the properties of Edith Page Smith consist of certain described real estate in Valparaiso, Chile, acquired from her mother by gift, certain shares of stock in various corporations, and a stated amount of cash; and that those of Vernon Skewes-Cox consist of a stated amount of cash and "the hereditary rights which correspond to him from the Estate of his deceased father."

In 1919 the petitioner and her husband moved to San Francisco, where they have since continuously maintained their residence. They have retained their status as British subjects. They each filed separate income tax returns for 1928 and 1930. In 1928 the husband received a salary of $8,336.80 and in 1930 he received a salary of $5,000. He reported all of his salary for each year. The Commissioner transferred one half of the salary for each year to the income of the petitioner for that year.

California is a community property state. In the absence of an effective agreement providing otherwise, one half of the salary of a husband who resided with his wife in California in 1928 and 1930 would be taxable income of his wife. *United States* v. *Malcolm*, 282 U.S. 792. A husband and wife could so contract, however, that all of the earnings of one would be taxable to that one as separate property. *Howard C. Hickman*, 27 B.T.A. 807; *Stanley S. Anderson*, 28 B.T.A. 179; *Earl* v. *Commissioner*, 30 Fed. (2d) 898. The decision in the latter case was reversed on appeal, 281 U.S. 111, but the decision of the Supreme Court is not inconsistent with our holding here. The contract here in question would undoubtedly have made all of the salary of the husband taxable to him if it had been entered into while the parties resided in California. The question is, Does their antenuptial contract entered into in Chile affect the husband's salary after they moved to California?

Story on Conflict of Laws, sec. 184, says that "where there is a marriage between parties in a foreign country and an express contract respecting their rights and property, present and future, that, as a matter of contract, will be held equally valid everywhere, unless, under the circumstances, it stands prohibited by the laws of the country where it is sought to be enforced." McKay, in his Community Property, sec. 626, also recognizes this rule and says: "Whether the contract does not extend to acquisitions made at the new domicile is, of course, a question of construction—a question of intention to be gathered from the terms used, interpreted in the light of the situation of the parties at the time of entering into the contract." The respondent contends that the contract does not "speak to the very point" so as to cover property later acquired in a new domicile. He cites several cases to support his contention. But,

after examining these cases and a number of other cases on the subject, we think that this contract does speak to the point and applies to the salary here in question. It does not specifically mention that the parties intend it to operate on property acquired outside of Chile. That, however, is not necessary, *Kleb* v. *Kleb*, 90 N.J. Eq. 305; 62 Atl. 396. See *L. C. Mitchell*, 28 B.T.A. 767. It expressly covers all property " which he or she may by any kind of title acquire during the marriage." The language is broad enough to include the salary here in question, and there is no circumstance known to us which would indicate that the words were not intended to have their natural broad meaning. The husband's British citizenship is a circumstance favorable rather than unfavorable to the view we have taken. The parties must be presumed to have meant what they said. The decided cases indicate that our interpretation of this contract is correct. *Kleb* v. *Kleb*, *supra; In re Cole's Estate* (Okla.), 205 Pac. 172; *Scheferling* v. *Huffman*, 4 Ohio St. 241.

*Decision will be entered under Rule 50.*