[Civ. No. 3374. First Appellate District, Division Two.—May 21, 1920.]

## JAMES E. SMITH, Appellant, v. PHELIA L. P. SMITH et al., Respondents.

[1] HUSBAND AND WIFE—TITLE TO PROPERTY—HOW ACQUIRED—CONFLICTING EVIDENCE—FINDING—APPEAL.—In an action in which both the husband and the wife claim title to certain real property, notwithstanding a conflict in the evidence, a finding of the trial court that the wife acquired by assignment from her sister, as a gift, the latter's equity in a contract for the purchase of the property, is conclusive on the appellate court.

[2] ID.—EARNINGS OF WIFE—NATURE OF—WHEN SEPARATE PROPERTY. Although the earnings of the wife during marriage are, as a rule, community property, the husband may relinquish to the wife the right to such earnings without any consideration other than their mutual consent, and they then become her separate property.

[3] ID.—AGREEMENT AS TO SEPARATE CHARACTER OF WIFE'S EARNINGS —HOW PROVED.—An agreement between a husband and wife that

---

2. What is community property, note, 126 Am. St. Rep. 99.

the earnings of the latter shall be her separate property may be proved by evidence as to the acts and conduct of the husband with relation to the earnings of the wife or business conducted by her as community property indicating that he did not regard them as community property.

[4] ID.—RELINQUISHMENT OF BUSINESS TO WIFE—SEPARATE PROPERTY. In this action involving, among other things, the right of a wife to a millinery business conducted by her and to the earnings derived therefrom, the evidence as to the manner in which the business had been conducted showed that it had been relinquished by the husband to the wife and had become her separate property.

[5] ID.—IMPROVEMENT OF WIFE'S PROPERTY—EXPENDITURES BY HUSBAND.—The expenditures by a husband of either his separate funds or the common funds of himself and wife in improving his wife's separate property does not operate to change the title. As between them, in the absence of any specific agreement to the contrary, the title to the improvements follows the land.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. S. Laughlin and Muhleman & Crump for Appellant.

Swaffield & Swaffield and Roland G. Swaffield for Respondents.

NOURSE, J.—Action to quiet title. Judgment was rendered in favor of defendant on her cross-complaint, from which plaintiff appeals.

Plaintiff and defendant Phelia L. P. Smith are husband and wife. The property which is the subject of this litigation consists of a lot, with dwelling-house thereon, situate in Long Beach, California. The complaint alleged that, at the time of the commencement of this action, plaintiff was the owner and in possession of the lot in question; that said lot was purchased and improved subsequent to the marriage of plaintiff and defendant Smith with the separate funds of plaintiff and the community funds of plaintiff and defendant Smith, and the deed for convenience was taken in the name of defendant Smith; that defendant Smith had encumbered the same by giving a trust deed to defendant The Title Insurance and Trust Company to secure the repayment of money had from defendant Long Beach

Savings Bank and Trust Company, and had used the money thus acquired without the knowledge or consent of plaintiff to the detriment of plaintiff and his interests in said property. Defendant Smith answered and cross-complained, denying the allegations of the complaint and setting up title in herself as her separate property and estate. The trial court found that the property was neither purchased with the separate funds of plaintiff and the community funds of plaintiff and defendant Smith, nor the separate funds of plaintiff. On the contrary, the court found that defendant Smith acquired, by assignment from her sister, as a gift, her equity in a contract for the purchase of lot 8, on which the sister had paid the sum of $335, leaving an unpaid balance of $165, which defendant Smith thereafter paid out of her separate funds.

Appellant contends that the property in question is community property because it was acquired subsequent to marriage and with community funds.

[1] This contention is based upon the testimony of appellant that the assignment was not made as a gift to his wife, but that she purchased her sister's equity in the lot for fifty dollars which he furnished for that purpose. This merely created a conflict in the evidence, and the finding of the court that it was a gift is conclusive as to that fact. Appellant further argues that the $165 balance paid by defendant Smith on the purchase price of the lot was money derived from a millinery business conducted by Mrs. Smith subsequent to their marriage and hence was community property.

[2] Although the earnings of the wife during marriage are, as a rule, community property, the husband may relinquish to the wife the right to such earnings without any consideration other than their mutual consent, and they then become her separate property. (*Wren* v. *Wren,* 100 Cal. 276, 279, [38 Am. St. Rep. 287, 34 Pac. 775]; *Larson* v. *Larson,* 15 Cal. App. 531, 535, [115 Pac. 340].)

[3] Such an agreement may be proved by evidence as to the acts and conduct of the husband with relation to the earnings of the wife or business conducted by her as community property indicating that he did not regard them as community property. (*Larson* v. *Larson, supra; Kaltschmidt* v. *Weber,* 145 Cal. 596, 599, [79 Pac. 272].)　[4]

Respondent Smith testified that she started the millinery business with $200 received from the sale of property concededly her separate estate. This was denied by appellant, who claimed that he advanced the $200 to help her start the business. But, as significant of his attitude with relation to that business, he testified: ''The proceeds from that store were kept in her personal bank account. I had no access to that bank account. I knew when she started the business and ran the bank account along that way. . . . I knew that she started her bank account. The bank account was in her own name. . . . I had a bank account and she had hers, and I do not think either had access to the other's account. She paid the bills for that millinery business out of her account except the first one; that was the money I let her have to start it with, that is, the big bill, $200 or $250, except for that she paid the bills out of her own account and she ordered the goods, selected them and determined what they should be. That was the way it always was from the beginning.'' It is apparent from an examination of the entire evidence that plaintiff made no claim to the business but treated it as his wife's separate property. The right to the millinery business and the earnings derived therefrom having been thus relinquished by plaintiff to his wife, they did, in fact, become her separate property.

[5] The only other question for determination is whether the original character of the lot was changed by the improvements erected thereon, which consisted of a dwelling-house costing in the neighborhood of $3,000. The trial court found on conflicting evidence that all improvements were made by respondent Smith out of her separate estate and property; that appellant from time to time advanced some moneys and funds out of his own separate estate and out of the community property, which were used in the improvements; that all such advancements were made by appellant as a gift to respondent Smith as and for her own separate estate and property; and that all improvements now on the real property are the sole and separate property and estate of respondent Smith, and that appellant has no interest in either the land or improvements thereon. The findings on the facts are conclusive; the conclusions of law drawn therefrom are supported by the authorities. The expenditure by a husband of either his separate funds or the community

funds of himself and wife in improving his wife's separate property does not operate to change the title. As between them, in the absence of any specific agreement to the contrary, the title to the improvements follows the land. (*Carlson* v. *Carlson,* 10 Cal. App. 300, 303, [101 Pac. 923]; *Shaw* v. *Bernal,* 163 Cal. 262, 267, 268, [124 Pac. 1012].) Appellant does not claim that there was any agreement that the property should become community property. Where no agreement has been made "it must rather be presumed that it was the intention of the husband to advance the money paid for the benefit of the wife's estate and that it was intended to accrue to her interest." (*Carlson* v. *Carlson, supra.*)

The judgment is affirmed.

Brittain, J., and Langdon, P. J., concurred.