FLORENCE V. CRUICKSHANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

F. G. CRUICKSHANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16449, 21790.   Promulgated September 24, 1928.

*Ralph W. Smith, Esq.*, and *Claude I. Parker, Esq.*, for the petitioners.

*Clark T. Brown, Esq.*, for the respondent.

OPINION.

MILLIKEN: Petitioners contend that under the antenuptial agreement each was absolutely and without a qualification entitled to receive one-half of the total income of both; that since this agreement was entered into prior to the adoption of the Sixteenth Amendment to the Constitution it is apparent it was not made to evade income tax; and that this right is a property right which can not be disregarded for the purpose of taxation or any other purpose.

Since the antenuptial agreement is valid and binding, it is immaterial for income-tax purposes whether it was executed before or after the adoption of the Sixteenth Amendment. We have not before us a question of tax evasion. Cf. *United States* v. *Isham*, 17 Wall. 496.. The issue presented is not whether that agreement did in fact result in an enforcible right to an equal division of the income between the parties, but is, What is the effect of the agreement upon the taxable income of each?

The agreement was carefully drawn and meticulously sets out the rights and liabilities of the parties. It clearly appears that the property mentioned in the agreement remained the absolute separate property of each party free from any claim of the other but under joint control; that the income and accumulations from such properties and all other income received by either party from any source whatever should be used by the parties for their mutual comfort and enjoyment; that any unused portion of such income and accumulations should be invested for the joint benefit of the parties, such investments to be under joint control; and that upon the dissolution of the marriage the parties (or the estate of the deceased party) should be entitled to the amounts each contributed and one-half of all the earnings, accumulations, income or other moneys from whatever source.

We will first discuss the effect of the antenuptial agreement on the taxable income of the husband other than that derived from the property covered by the agreement. The case of *Blair* v. *Roth*, 22 Fed. (2d) 932 (certiorari denied, 277 U. S. 588), is in point. In that case the court said:

\* \* \* As exemplified in actual practice, the agreement of the appellee and his wife amounted to substantially this: They would contribute their earnings to a common fund, out of which their personal and community expenses would be paid; and of the savings, if any, and the property in which such savings were invested, they were to be the owners upon an equal footing. By the appellant it is not contended that, under the California statutes (sections 159, 160, Civ. Code; *Wren* v. *Wren*, 100 Cal. 276, 34 P. 775, 38 Am. St. Rep. 287; *Kaltschmidt* v. *Weber*, 145 Cal. 596, 179 P. 272; *Smith* v. *Smith*, 47 Cal. App. 650, 191 P. 60; *Perkins* v. *Sunset T. & T. Co.*, 155 Cal. 712, 103 P. 190), a husband and wife domiciled in that state may not make valid agreements relating to either their separate or their community property, or that it would be incompetent, by appropriate agreement between them, to constitute the earnings of the wife her separate estate. In essence his contention is that, at most, the agreement here was for an assignment by each of the parties of one-half of his or her earnings to the other; that, at the instant they were received, the salaries were, by the law, impressed with the status of community property, and were taxable with reference to that status; and that the obligation to pay the tax so computed could not be escaped by contributing such incomes to the so-called partnership between the two members of the community, any more effectually than by contributing it to a like enterprise as between one member of the community and a third person. In this view we concur.

The above is decisive of this particular issue. Besides, it appears that during three of the years involved, the husband was a member of a partnership. This feature brings this proceeding in so far as said years are concerned, within the decision of *Mitchel* v. *Bowers*, 15 Fed. (2d) 287.

The reasoning in the opinion in *Blair* v. *Roth, supra*, is equally applicable to the taxability of income derived from the properties covered by the antenuptial agreement. That instrument provides that the property of each of the parties shall, subject to the right to the joint use of the income and the right of joint control, remain the separate property of the party owning it at that time and should be free from any claim of the other. Income from such property is under the law of California separate property. As such it is first the income of the owner of the property and the obligation to pay tax thereon can not be escaped by contributing such income to the common use of both. Such also has been the consistent holdings of the Board. See *Samuel V. Woods*, 5 B. T. A. 413; *Fred W. Warner*, 5 B. T. A. 963; *Guy C. Earl*, 10 B. T. A. 723; and *H. A. Belcher*, 11 B. T. A. 1294. Cf. *C. R. Thomas*, 8 B. T. A. 118. We are of opinion that each party is taxable on the income derived from the property owned by him or her at the date of the agreement and from any other property representing property then owned.

Counsel for petitioner calls to our attention the provisions of section 161(a) of the Civil Code of California enacted as a law July 28, 1927, and contends that "such section, while not a law during the years in question, was a declaration by the Legislature as to what it has always intended to mean in reference to the respective rights or interests of a husband or wife in California community property." It seems sufficient to observe that, whatever may be the import of the section of the California statute in question, that it was not a law during the years here before us can have no bearing on the taxable status of the income theretofore earned. The treatment that should be accorded such income is controlled by the decision of the United States Supreme Court in *United States* v. *Robbins*, 269 U. S. 315.

Counsel also contends that the antenuptial agreement presents a joint venture. It seems sufficient to point out that there was no combination of property, money, efforts, skill or knowledge in some specific venture or common undertaking.

Since it does not appear from the record whether there is any income from property purchased with surplus income, we refrain from discussing that phase of the case.

It appears that for the years 1920 and 1921, respondent allocated the income from the property covered by the agreement $\frac{7}{7}$ to the husband and $\frac{7}{7}$ to the wife and that for the years 1922 and 1923

he allocated such income to each in equal shares. This appears to be quite inconsistent, but we have not sufficient facts before us to make findings on this point. It is true that in the wife's case, involving the years 1920 and 1921, an accountant was introduced to testify as to what he discovered on certain books of account. Whether such books were properly kept does not appear. The pleadings do not contest the determinations of respondent, except to the extent of alleging that he did not allocate the income in accord with the terms of the agreement. It appears from the deficiency letter that respondent made certain changes in petitioner's income as reported. The figures given by the witness are not in all respects in harmony with those in the deficiency letter. Besides, on cross-examination this witness testified:

Q. You don't know, you can't tell. from your examination, can you, how much income can be attributed to the increase over the $10,000 or over the $760,000 or how much can be attributed to those particular items?
A. No.

*Judgment will be entered for the respondent.*