ANTON DOLENZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93311.   Promulgated May 8, 1940.

John V. Lewis, Esq., Clyde C. Sherwood, Esq., and Jerome Politzer, Esq., for the petitioner.

A. L. Murray, Esq., for the respondent.

1094

OPINION.

DISNEY: Royalties, the amounts of which are not in controversy, were received by the petitioner in 1934 and 1935 from the Acme Brewing Co. under the licensing agreement of June 2, 1934. The respondent taxed all of the payments to petitioner on the ground that the fees represented earnings of separately owned property of the petitioner, namely, Patent No. 1,487,842. The petitioner contends that by an oral agreement entered into with his wife he converted all of his separate property into community property and that only one-half of the income therefrom, as well as income from property acquired subsequent to marriage, should be taxed to him.

The parties are in agreement that under the laws of California separate property of husband and wife may be transmuted into community property by an oral agreement, provided the understanding to that effect is executed. The rule is established by decisions of the California courts. *In re Sill's Estate*, 121 Cal. App. 202; 9 Pac. (2d) 243; *Siberell* v. *Siberell*, 214 Cal. 767; 7 Pac. (2d) 1003, *Kenney* v. *Kenney*, 220 Cal. 134; 30 Pac. (2d) 398; *In re Wahlefeld's Estate*, 105 Cal. App. 770; 288 Pac. 870; *In re Kelpsch's Estate*, 203 Cal. 613; 265 Pac. 214.

The parties differ on whether there was a consummated agreement with respect to the patent. This may be shown by surrounding circumstances, including the conduct of the husband. *Title Insurance & Trust Co.* v. *Ingersoll*, 153 Cal. 1; 94 Pac. 94; *Smith* v. *Smith*, 47 Cal. App. 650; 191 Pac. 60. The petitioner relies upon his testimony and that of his wife to establish an executed agreement as to the patent. The respondent contends, in effect, that their testimony indicates nothing more than general promises on the subject.

The petition did not allege a premarital agreement between petitioner and his wife for the conversion of their separately owned property into community property upon their marriage or at any other time. It did, however, allege that after the marriage petitioner

"in consideration of his natural love and affection gave to his wife a one-half interest in said process and improvements thereon * * *." Petitioner testified that prior to his marriage he and his wife reached an agreement that their property, including the patent, together with future accumulations, would be shared jointly and that the property arrangement was never changed. Petitioner's wife testified:

> * * * We also promised each other that when we were married everything we owned would become joint property; it would be community property; half of everything that we owned would belong to him and half of everything— half of everything that he owned would belong to me and half of everything that I owned would belong to him; that did include the patent. The patent was mentioned many times.
>
> * * * * * * *
>
> We promised each other that at marriage that [personal property of each] would become community property.

She also testified that petitioner informed her that if "he ever should get royalties from that particular patent, or should get anything, if he should sell the patent I should have half * * *", that his promise was that "I should have half of everything that he should own, intangible property or income", and that the promises were never reduced to writing.

This testimony of petitioner and his wife, standing alone, discloses a mutual understanding that all of their property would be community property. Their returns, however, do not agree with their testimony.

In the separate income tax returns filed by petitioner and his wife for 1930 unequal amounts were reported as income from interest and dividends, and the petitioner reported interest on foreign bonds but his wife did not. It may be that the differences were due to the marriage within the year 1930. They filed joint returns for 1931 and 1932. Their original separate returns for 1933 reported only one item of community income, that of salary of petitioner. In addition, petitioner reported four, and his wife two, items of income from separate property. In amended returns for 1933, executed on April 8, 1935, petitioner reported all of his income as earnings from community property, and in addition to one-half thereof, petitioner's wife reported the same interest and dividend income from separate property as she had reported in her original return. All of the income of petitioner for 1934 and 1935 was reported as community income, but petitioner's wife, as in 1933, reported interest on bank deposits and dividends on stock of domestic corporations as separate income.

It thus appears that petitioner did not consider that any of his property had a community status for income tax purposes prior to the execution on April 8, 1935, of an amended return for 1933 and

his original return for 1934, and that his wife continued to hold a bank account and stock as separate property. The manner in which petitioner and his wife returned their income for Federal taxation is directly opposed to the idea of a consummated mutual agreement to convert all of their property into community property, and indicates rather that, as respondent in effect argues, they had general conversations on the subject, which however they themselves never carried into effect. The record contains no explanation for the existence as late as 1935 of separately owned property of the wife in the face of the oral mutual understanding that all such property would be community property. Petitioner's treatment of the royalties from the patent in his amended return for 1933 and original return for 1934 is no more of an indication of an assignment to his wife of a community interest in the patent than it is of an assignment to her of one-half of the income from the property.

The petitioner points to the joint bank account and the purchase of real property in their joint names as acts disclosing consummation of a previous agreement to convert their separate property into community property. The principal commercial bank account of petitioner was not converted into a joint account of himself and his wife until March 1935 and the real estate was not purchased with funds in the joint account until September or October 1935. The opening of the joint account proves nothing particularly material. *Pedder* v. *Commissioner*, 60 Fed. (2d) 866.

The facts here distinguish this proceeding from *Estate of J. Harold Dollar*, 41 B. T. A. 869. Therein, though some property was returned separately by one spouse, this was consistent with the contention of an internal revenue agent who had examined the taxpayer's report, made on a community basis for an earlier year, and had taken the view that there was no community as to certain stocks. Also, there the declaration of the community was proved not only by oral statements, but by written recitations in two wills. The inconsistency herein found did not appear in the *Dollar* case.

In view of the condition in which we find the record, we conclude that it was not error for the respondent to regard the patent as separately owned property of petitioner during the taxable years.

The petitioner contends, necessarily in the alternative, that the royalties in question were derived from the licensing of a process developed by him after his marriage, and that, therefore, all of the income is taxable as community income. At the close of the hearing counsel for the petitioner moved to amend the petition further than had been done by permission at the opening of the hearing, to conform to the proof on the point. The motion was denied and is renewed upon brief.

In his determination of the deficiency the respondent held that the royalties resulted from petitioner's ownership of the patent and that practically all of the work done to improve the patent was performed prior to petitioner's marriage. The petition alleges, among other things, that the petitioner's wife rendered valuable assistance in improving the patented process; that all of the improvements were made during the marriage relationship; and that the license given the Acme Brewing Co. under the terms of the agreement of June 2, 1934, was for the use of the patented process and all improvements thereon and thereafter to be made. An amendment to the petition, filed by permission given at the beginning of the hearing, alleges that the amounts paid during the taxable years pursuant to the terms of the agreement of June 2, 1934, represented compensation for services rendered and for the use of the patent with the improvements thereon. In his opening statement at the hearing counsel for the petitioner announced one of his contentions to be that the royalties were paid for the use of a process entirely different from the patent and that it was developed after his marriage, with the assistance of his wife. It thus appears that the allegations of fact in the petition and the amendment thereto were broad enough for the introduction of evidence on this contention of petitioner and that amendment of the petition to conform to the proof is unnecessary.

The petitioner proved the development by him after his marriage of a process for the manufacture of lager beer and the use of the method by the Acme Brewing Co. under the terms of the agreement of June 2, 1934. The process includes elements not used in the manufacture of a beverage under the patent, and we find it to be a different process. But to prevail, the petitioner was obliged to show that the royalties were paid exclusively for the use of the new process.

The royalties were paid under the terms of the agreement of June 2, 1934, the preamble of which recited that petitioner was the owner of Patent No. 1,487,842 and that the Acme Brewing Co. desired to have a license to use the invention.

The agreement gave the Acme Brewing Co. a license to use the patent and "any renewals, amendments, modifications and/or additions thereto" and an option to use any improvements made by petitioner on the process covered by the patent. Petitioner's new process was then being used by the Acme Brewing Co. Other indirect reference was made in the contract to petitioner's new process for manufacturing lager beer. A fair construction of the agreement is that the royalty was to be paid not only for the use of the patent, but for any other process then owned or thereafter developed by petitioner for the manufacture of beer.

Petitioner argues, however, that the patent covered the manufacture of near-beer and was not used by the licensee during the taxable years. Assuming that to be the case, it is not decisive. It had the exclusive right to use the patent in California and some portion of the royalties was paid for the privilege.

The petitioner argues that, where separate property and community property are so commingled that it is impossible to trace the funds to their respective sources, the whole of the property will be treated as community property. The rule is supported by decisions of California courts. *In re Fellows' Estate*, 106 Cal. App. 681; 289 Pac. 887; *Fountain* v. *Maxim*, 210 Cal. 48; 290 Pac. 576; *Yager* v. *Yager*, 7 Cal. (2d) 213; 60 Pac. (2d) 422. The rule does not apply here, where the character of the property producing the income can be identified with certainty. *Pereira* v. *Pereira*, 156 Cal. 1; 103 Pac. 488; *In re Gold's Estate*, 170 Cal. 621; 151 Pac. 12; *Clara B. Parker, Executrix*, 31 B. T. A. 644. The amount attributable to each class of property is a question of fact to be determined from the evidence in the case. *Shea* v. *Commissioner*, 81 Fed. (2d) 937, affirming 30 B. T. A. 1265; *In re Gold's Estate, supra.*

We have no evidence showing the value of the patent or the amount of petitioner's investment therein and are in no position to attribute as income therefrom an amount based upon a fair rate of return on the capital invested, such as was done in the *Parker* case, *supra.* Other facts of record, however, furnish a basis for a reasonable allocation. The agreement of October 10, 1925, between the petitioner and the Acme Brewing Co. provided that the petitioner was not to receive a royalty or license fee for the use of his patent so long as he continued to be an employee of the licensee. His salary from the Acme Brewing Co. was $12,000 per year on June 2, 1934, when his services as an employee were terminated. The petitioner's duties were similar to those of a plant superintendent or manager, for which services the Acme Brewing Co. paid others a salary of $6,000 per year during 1934 and 1935. This indicates that one-half, or $6,000, of his salary was paid for the use of the patent and constitutes the best evidence in the record on the point. It is consistent with testimony of petitioner that during 1934 and 1935 a reasonable value of his services was one-half of the royalties accruing to him. Accordingly, we hold that a sum computed at the rate of $6,000 per year was received by the petitioner for the use of the patent from June 2, 1934, to the close of 1935, and is taxable to petitioner as income from separate property.

The next contention of the petitioner, raised by an amendment to his petition at the hearing, is that a portion of the amounts in ques-

tion represents compensation for personal services, taxable as community income.

One of the chief reasons for the delay in entering into the contract of June 2, 1934, was the inability of the contracting parties to agree upon the time petitioner would devote to supervisory duties after the agreement was signed. The understanding reached and reduced to writing was that he would instruct representatives on the use of his process and, without conflicting with his other activities, devote such time to the supervision of the licensee's manufacturing activities as he considered necessary. Any inability to perform the work was not to be regarded as a breach of the contract. During the remainder of 1934 and throughout 1935 the petitioner performed the work contemplated by the agreement. Thus the amounts in question were received for (a) personal services, (b) the use of the patent, and (c) the new process.

The respondent does not deny that if some part of the income was paid for the performance of personal services the amount thereof is taxable as community income. The petitioner contends that the evidence establishes the sum of $24,000 per year to be reasonable compensation for the services performed. The respondent contends that the allowance should not exceed $6,000 a year.

The president of the Acme Brewing Co. testified that petitioner's services were worth from $18,000 to $24,000 per year as a full time employee and the petitioner testified that a reasonable value of his services was one-half of the royalties paid, $47,355.10 in 1934 and $36,083.15 in 1935. The testimony of the president of the Acme Brewing Co. has little weight in the absence of evidence on the amount of time petitioner spent in the performance of his duties. Neither are we impressed with petitioner's testimony on the point. Until April 1933 he performed like work as a full time employee for $10,000 per year, and thereafter to June 2, 1934, for an annual salary of $12,000. In addition, his employer had the use of his patent. As already pointed out, the Acme Brewing Co. could and did employ plant superintendents, qualified to carry out petitioner's instructions, for an annual salary of $6,000. There is no clear proof of the reasonable value of petitioner's services, but we are under a duty to make a finding from such evidence as there is in the record on the point. Under the circumstances, we attribute $6,000 per year as compensation for services rendered by the petitioner from and after June 2, 1934, under the agreement, of which one-half is taxable to petitioner as community income.

We having concluded that of the income received by the petitioner under the agreement of June 2, 1934, amounts computed at the rate of $6,000 per year are allocable to the use of the patent from June 2, 1934,

to the close of 1935, and are taxable as income from separate property, and that amounts also computed at the rate of $6,000 per year represent compensation for personal services of petitioner from June 2, 1934, to the close of 1935, and are taxable as community income, it necessarily follows that all of the other income in controversy is taxable as community income, received for the use of the new process.

The petitioner urges that he is entitled to an adjustment under section 820 of the Revenue Act of 1938 as to taxes paid for 1933. The Commissioner in determining the deficiency held the amount of royalties on which petitioner paid a tax for 1933 to be income in 1934, and at trial the petitioner abandoned his previous view to the contrary. The matter was not pleaded, but was suggested at the hearing and is discussed in the briefs. Upon study of the statute and the Congressional Committee Reports attendant upon the passage of the act, we are of the opinion that we have no jurisdiction to make the desired adjustment. The statute provides for adjustment after "the date the determination becomes final," and defines "determination" as including a decision by the Board of Tax Appeals, which has become final. Our function seems to be merely to render a decision upon the issues involved. In any event, information as to "amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax" is by the statute made necessary for an adjustment, and such information is not contained in the record. We make no adjustment.

Reviewed by the Board.

*Decision will be entered under Rule 50.*