Estate of J. B. Weil, Deceased, Mrs. Pauline P. Weil, E. J. Stern and N. E. Kilpatrick, Executors v. Commissioner. Pauline P. Weil v. Commissioner.
Estate of Weil v. Commissioner
Docket Nos. 106099, 106100.
United States Tax Court
1943 Tax Ct. Memo LEXIS 341; 1 T.C.M. (CCH) 1020; T.C.M. (RIA) 43207; April 28, 1943
*341 M. E. Kilpatrick, Esq., 1045 Hurt Bldg., Atlanta, Ga., for the petitioners. Frank M. Thompson, Jr., Esq., and John R. Stivers, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion These two cases, one of Julius B. Weil, and the other of Pauline Weil, his wife, whose Christian and legal name does not appear of record in the deficiency notice and petition, but merely as "Mrs. J. B. Weil", were consolidated for hearing and decision. They both involve deficiencies in income tax for the following years and amounts: 1934
1935
1936
1937
Estate of J. B. Weil
$58,597.21
$ 6,966.04
$11,211.71
$11,783.72
Pauline Weil
44,243.27
19,957.03
36,168.23
31,862.01
A claim for refund in the amount of $818.50 for the year 1935 is made by J. B. Weil's executors on account of additional tax which it is alleged was erroneously returned by decedent as due upon the gain from the sale in that year of American Tobacco Company stock, and a like claim of refund is made by Pauline Weil in the alternative for 1934, should petitioner's claim in respect of the third issue in docket 106099 be disallowed. Three issues are raised: (1) whether a certain distribution of March *342 Investment Co. stock, more particularly described in our Findings, was made in 1934, it being conceded that it would be taxable, if then made, or in 1933. This issue is common to both causes. (2) Whether the amounts claimed by each petitioner as taxable to a trust established by each for the benefit of his (or her) daughter are includible in the settlor's income for the years 1934 to 1937, inclusive. (3) Whether respondent properly included in the income of Julius Weil for 1934 as a dividend the amount received on the sale of certain American Tobacco Co. stock in 1935. Findings of Fact 1. March Investment Company stock. During the year 1933 J. B. Weil and Pauline Plonsky Weil, husband and wife, (the latter being referred to in the determination of deficiency and the petition as "Mrs. J. B. Weil"), resided in Nashville, Tennessee. Together they owned all the outstanding capital stock of the Coca-Cola Bottling Works of Nashville, consisting of 100 shares. Fifty-nine of these shares were in the name of Mrs. Weil and forty-one in her husband's name. Mrs. Weil had acquired her shares from her husband over a period of years. In the fall of 1933 the Bottling Works owned certain *343 securities and notes not necessary to the operation of its business. Harold Hirsch, an attorney of Atlanta, Georgia, one of the directors of the Bottling Works and counsel for its stockholders, suggested that these assets be transferred to a new corporation pursuant to a plan of reorganization which should result in a tax free transaction. Later, on December 26, 1933, an auditor and accountant of Nashville, Tennessee, engaged in the business of preparing tax returns and offering advice on tax matters, wrote Hirsch a letter in which he enclosed a plan of reorganization for the Bottling Works. At the same time he recommended that the reorganization be effected before the close of the year 1933 because of anticipated changes in the Revenue Acts which would cause such a transaction, if entered into after the close of 1933, to be taxable. The plan contemplated the transfer to a new corporation of the assets above mentioned and the issuance of all the new corporation's stock to the Bottling Works which corporation should, in turn, distribute it to the Weils, its sole stockholders. On December 27, 1933, a meeting of the Board of Directors of the March Investment Corporation, a Delaware corporation, *344 was held in Atlanta, Ga. The charter for this corporation had been obtained by Hirsch in the spring of 1933, but the corporation had never functioned. At the Directors' meeting the plan of reorganization was approved and adopted. As adopted, the plan called for the issuance by March Investment Corporation of 1,000 shares of no par value stock in return for the assets of the Bottling Co. not needed in the latter's business. On the same date Hirsch wrote J. B. Weil, president of the Bottling Works, enclosing the minutes of the meeting of the directors of the March Investment Corporation and instructing him what steps were necessary to be taken for the completion of the plan. Two days later, on December 29, 1933, a meeting of the stockholders of the Bottling Works was held in Nashville at 9:30 A.M., followed by a meeting of the directors at 10:00 A.M. At both of these meetings the plan of reorganization, adopted earlier by the directors of the March Investment Corporation, was adopted. It was directed that the stock of the latter corporation be distributed by the Bottling Works to its stockholders, pursuant to the plan. A written agreement embodying the plan was executed by J. B. Weil *345 as president of both corporations and attested by Mrs. Weil as secretary of both corporations. On the same day a written transfer dated as of December 27, 1933, was executed and delivered by the Bottling Works to the March Investment Corporation, transferring to the latter title to the various assets, which included 1600 shares of Coca-Cola Co. Class A stock, 318 shares of Coca-Cola common stock, a $5,000 bond of the City of Jacksonville, Florida, and notes receivable in the amount of $38,725. The Bottling Works on its journal entries dated December 29, 1933, recorded the transaction, showing transfer of the assets and receipt of the 1000 shares of stock. This entry was actually made December 30. The following entry also appeared on the same date: $144,960.96 Surplus. This entry is made in order to distribute all of the capital stock of March Investment Corporation to the stockholders of Coca-Cola Bottling Works. Nashville, Tenn., in pursuance of the plan of reorganization entered into on 27th day of December 1933. Surplus was charged in the amount of $144,960.96 and a credit was set up to March Investment Corporation in the same amount. This figure was the cost to the Bottling *346 Works of the assets transferred. Neither J. B. Weil nor his wife surrendered any of their stock in the Bottling Works. The March Investment Corporation, by its bookkeeper, entered on December 29, 1933, in its journal notations to the effect that the assets had been received from the Bottling Works and the 1000 shares of no par stock issued in exchange therefor. At a special meeting of the stockholders of the Investment Corporation at 11:30 A.M. on December 29, 1933, the action of the directors in approving the plan of reorganization was ratified. On January 4, 1934, a corporate seal was purchased for the March Investment Corporation and certificates for its stock issue were purchased on the same day. There were no stock certificates in existence representing stock of the Investment Corporation prior to this latter date. Revenue stamps affixed to the stock certificates were purchased March 23, 1934, but marked cancelled on December 29, 1933. A check issued by the Bottling Co. in payment of corporate registration to the State of Delaware was not paid by the drawee bank until March 22, 1934, although dated December 29, 1933. The certificates, though not issued until March 1934 were *347 also dated December 29, 1933. The certificates were made out to show 590 shares of stock in the name of Mrs. Weil and 410 in the name of J. B. Weil. 2. Income of The Two Trusts Statements were executed by J. B. Weil and Pauline P. Weil on December 24, 1934, purporting to transfer certain shares of Coca-Cola Bottling Works stock in trust for their daughter. J. B. Weil executed on December 31, 1935 another statement purporting to modify the above provisions. None of the three statements was witnessed or sworn to. The provisions of the three statements are as follows: KNOW ALL MEN BY THESE PRESENTS, That the Undersigned, JULIUS B. WEIL, hereinafter referred to as grantor, for and in consideration of natural love and affection does hereby sell, assign, transfer and convey unto said JULIUS B. WEIL as trustee for the use of the beneficiaries herein named, eight (8) shares of the common stock of Coca-Cola Bottling Works, a Tennessee corporation, to have and to hold said stock as trustee forever, in fee simple, for the uses and purposes, however, hereinafter set forth. 1. It is intended that this transfer and conveyance is a gift by the said grantor, and is irrevocable, the purpose *348 of the appointment of grantor as trustee being to hold legal title to said stock and to invest and reinvest the income and principal thereof for the benefit of the cestuis que trustent [trust] as herein provided. In so far as concerns the gift herein made to grantor's daughter, Pauline Weil, the same is intended to provide, to the extent made possible by said gift, for the care, maintenance, support and education of said beneficiary during her minority, in lieu of the furnishing to her by grantor directly of such care, maintenance, support and education as required of grantor by law. 2. Grantor has simultaneously with the execution of this instrument transferred the certificate evidencing said eight (8) shares in writing to trustee and this gift and trust shall become immediately effective upon the execution of this instrument, and the trustee having accepted the terms of the trust agrees to have said stock registered on the books of the Coca-Cola Bottling Works in accordance with said transfer and to deliver a copy of this trust agreement to Coca-Cola Bottling Works. 3. The trustee shall hold the legal title to said stock in trust for the cestuis que trustent [trust] herein named, *349 as follows: The income arising from said corpus during the life of Pauline Weil (grantor's daughter) shall become the property of and be held for the benefit of said Pauline Weil as herein provided. Upon the death of Pauline Weil, the corpus herein set up shall become the property of and be distributed equally among the natural children of said Pauline Weil, living at her death, upon their reaching the age of twenty-one (21), provided, however, if said Pauline Weil die leaving no natural living children, the entire corpus shall then become the property of grantor's present wife, Pauline Plonsky Weil, or if she be then dead, the corpus shall become the property of any religious or charitable organization to be selected by the then acting trustee hereunder, unless grantor be the trustee at said time, in which event the selection shall be made by Harold Hirsch of Atlanta, Georgia, if living, otherwise by E. J. Stern, if living, otherwise by the court having jurisdiction of trust estates in Davidson County, Tennessee. 4. Should the trustee die or become incompetent or unable for any reason to continue as trustee hereunder, the successor trustee shall be MRS. J. B. WEIL, wife of the *350 trustee herein named, and if she be dead or for any reason unable to or refuse to accept the trust, Harold Hirsch of Atlanta, Georgia, shall name a trustee, and if he be dead or unable for any reason to make such appointment, the same and all subsequent appointments shall be made by the court having jurisdiction of trust estates in Davidson County, Tennessee. 5. The trustee herein appointed and any successor trustee shall have the right and power to (a) vote said stock at all meetings of the stockholders; (b) to exchange or sell said stock at public or private sale, without notice or court order of any kind in connection with any merger, consolidation or other corporate reorganization of any kind whatsoever affecting said company or any successor thereof; (c) to collect all dividends of every nature whatsoever and to invest and reinvest said funds or other income as in the sole discretion of the trustee is advisable and is to the best interest of the cestuis que trustent, and in so investing and reinvesting, the trustee shall not be limited to investments authorized by the laws of the State of Tennessee or of any other state for investment by trustees, but shall invest in any stock, *351 bond, or other security, real estate or other property of whatever nature as is deemed advisable by the trustee. 6. Stock dividends shall remain a part of the corpus of this trust. The trustee shall also have the following powers, namely: 7. To borrow on said stock for the benefit of the cestuis que trustent [trust] and to pledge said stock or any part thereof, or said corpus if the form thereof be changed as herein provided, as collateral on loans whenever in the discretion of the trustee it is to the best interest of the cestuis que trustent; 8. To sell said stock for the benefit of the cestuis que trustent at public or private sale without notice and without any order of court, at any time when such sale of said stock or any part thereof is to the best interest of the cestuis que trustent, [trust] and to invest and reinvest the corpus as in the discretion of the trustee is [trust] deemed best, the trust being authorized to invest such corpus and reinvest it in any property or security of any nature whatsoever or not authorized under the laws of the State of Tennessee or of any other state. 9. Notwithstanding the power herein given to the trustee to invest and reinvest the *352 income and the corpus, the trustee is authorized to use such portion of the income and principal as is necessary for the support and maintenance, including education, of PAULINE WEIL (grantor's daughter), and of the natural children of PAULINE WEIL if she die leaving such children; the trustee to be the sole judge as to the amounts to be so expended, all income arising from the corpus during the life of PAULINE WEIL over and above the amount of income used for the support, education and maintenance of PAULINE WEIL to be the sole property of PAULINE WEIL and to be delivered to her upon her reaching the age of thirty (30) years. 10. The powers given to the trustee herein appointed shall extend to all successor trustees hereunder and the trustee herein named and all successor trustees are relieved from giving any bond of any nature whatsoever now or hereafter required of trustee under the laws of the State of Tennessee or of any other state, from taking any orders of court as a condition precedent to the execution of any power given, or from making any reports, inventories, or returns of any nature whatsoever now or hereafter required under the laws of any state. IN WITNESS WHEREOF *353 the grantor has hereunto affixed his hand and seal, this 24 day of December 1934. (Signed) JULIUS B. WEIL GRANTOR I hereby accept the within trust, and agree to perform and carry out the terms thereof. This 24 day of December 1934. (Signed) JULIUS B. WEIL TRUSTEE The amending instrument is as follows: WHEREAS, on the twenty-fourth day of December, 1934, the undersigned did execute a trust to himself as trustee for eight (8) shares of common stock of COCA-COLA BOTTLING WORKS, a Tennessee corporation; and WHEREAS, it is the desire of all parties concerned to amend said trust, the said trust, with the consent of all parties, is hereto [trust] amended, as follows: Under paragraph 9, the trustee is no longer authorized to use any portion of the income and principal to perform any legal obligation that I, the grantor, as father of the cestuis que trustent [trust], PAULINE WEIL, am obligated to perform, and the trust is therefore amended by eliminating that portion of paragraph 9 which provides that the trustee is authorized to use such portion of the income and principal as is necessary for the support and maintenance, including education, of PAULINE WEIL, it being the intention *354 and purpose of this amendment to eliminate the use of either income or principal for the performance of any legal duty that I owe my daughter, PAULINE WEIL, the cestuis que trustent [trust] hereunder. IN WITNESS WHEREOF, the grantor has hereunto affixed his hand and seal, this 31st day of December 1935. J. B. WEIL (SEAL) WE CONSENT to the above and foregoing. This day of 19 . J. B. WEIL (SEAL) TRUSTEE On the same day that Julius's trust was executed, December 24, 1934, Pauline Weil, his wife, executed a trust identical in all pertinent particulars, except as follows: She constituted Julius trustee; next, Harold Hirsch, and last, E. J. Stern to be successor trustees in case of death. Her daughter, Pauline, was likewise named sole cestui que trust, but her husband, Julius, was named remainderman on failure of the daughter's issue. The corpus was 25 shares of Coca-Cola Bottling Co. stock. The second paragraph in Art. 1, to the effect that the gift is in lieu of support, was omitted. During the taxable years before us these trust instruments were kept in a safety deposit box in the name of J. B. Weil, Trustee. During a part of the time after the creation of the trusts, *355 the box also contained securities and documents, the individual property of Julius Weil and his wife, Pauline. At a later time, undisclosed by the record, these were removed. One trust account was set up on the books of the Coca-Cola Botting Works in the latter part of 1934 by the bookkeeper who, at the time, had never seen the "trust instrument". He did not know exactly what the trust account was, understanding only that there was a trust for the daughter of the Weils. The only record of the income attributed by the petitioners to the trusts was on the books of the Coca-Cola Bottling Works, until the audit made in 1937, noted below. Personal accounts of Julius and Pauline Weil also appeared on the same books. Various debit and credit entries were made by the bookkeeper during the years 1934, 1935, 1936 and 1937, representing only his notion of what should be entered in the trust account. He received no instructions from Julius Weil as to the trust account, but having heard of trusts for the daughter, Pauline, and without having seen the trust deeds, he opened an account on the Bottling Co.'s books so that dividends might be paid into it. Some of the individual expenses of both Julius *356 and Pauline Weil were at times charged to the trust account. Weil was taken sick in Europe in 1935, returned in the fall of that year, was stricken with paralysis in January, 1936, and probably sometime later in that year instructed the bookkeeper that the living expenses entries had been improperly made in the trust account. For 1934, the trusts having been created on December 24, of that year, the books of record contained only three entries in the trust account and at the end of the year the account was stated so as to show no credit balance. In February, 1937, one A. H. Blair, a certified public accountant of Nashville, Tennessee, received instructions from Hirsch to set up separate trustee books. He thereupon made an audit of the Bottling Company's books for a period beginning December 24, 1934. In compiling a statement showing the "trust income and disbursements" and in setting up "trust" books in 1937, Blair used as his basis the books of the Coca-Cola Bottling Works as explained by the company's bookkeeper, Carol L. Short; and after he had made up his entries, he consulted Hirsch in order to obtain his approval before opening his books according to these entries. On January *357 2, 1936, J. B. Weil withdrew by check signed "Pauline Weil, by J. B. Weil", the entire amount of a savings account in the name of Pauline Weil, $23,500, and placed it to his personal credit on the books of the Coca-Cola Bottling Co.
As to this issue certain facts are pertinent which are found by us under the third issue which immediately follows. 3. American Tobacco Co. Stock. On July 28, 1934, J. B. Weil purchased 500 shares of American Tobacco Co. B. stock. He had paid for the stock while in the East by a check signed by him personally drawn on the Broadway National Bank of Nashville. He had no account there or else insufficient money to cover the check, and the bank, therefore, informed the Coca-Cola Bottling Co., whose accountant took up Weil's check and substituted its own for $37,600. This was in conformity with Weil's long-established procedure of handling his own personal financial matters through the Bottling Co. This stock was sold through the Trust Co. of Georgia, in Atlanta, in two lots, 200 shares on December 24, 1934, and 300 shares on December 27, 1934. On the books of the Coca-Cola Bottling Co.'s journal, however, the stock was entered as a dividend distribution *358 on December 31, 1934, 300 shares to petitioner, Pauline Weil, and 200 shares to Julius B. Weil, as trustee, pursuant to a resolution of the board of directors of the company, dated December 24, 1934, but not introduced in evidence. Harold Hirsch, Weil's counsel, took the stock to Atlanta and sold it. There is no evidence to show in whose name the stock was issued. The broker's invoices show the stock sold on the account of the Coca-Cola Bottling Co., the 300 shares being sold for $24,463.75 and the 200 shares being sold for $16,329.17. A check of the Trust Co. of Georgia in the amount of $40,792.92 covering the sale price of the stock was issued to Hirsch and by him endorsed to Weil. Weil, on January 10, 1935, applied the proceeds to his personal note of $60,000 given to the Broadway National Bank on December 31, 1934. The audit of the J. B. Weil, trustee, account, made in 1937, shows receipt from the sale of American Tobacco stock in 1935 to $16,317.17. Pauline Weil reported in her 1934 income tax return the value of the 300 shares said to have been received by her, and Julius Weil, as trustee, returned in the same year the value of the 200 shares claimed to have been received *359 by him as trustee. By mistake, an accountant of the Coca-Cola Bottling Co. in 1935 filed an amended return for Julius Weil individually in which he reported a profit of $1,915.75 on the sale of the 300 shares and paid tax thereon. On December 13, 1937 petitioner Julius Weil filed a claim for refund of the tax so paid. Opinion KERN, Judge: I. The petitioners admit that the so-called "reorganization" of the Coca-Cola Bottling Co., was a device by which certain assets of the Bottling Co., which it did not need in the conduct of its business, could, in effect, be distributed to its stockholders without taxation by strict technical compliance with section 112 (g), Revenue Act of 1932, which permitted a distribution such as the one contemplated by the "plan of reorganization" to go untaxed. This loophole was noticed and successfully stopped, however, by the omission of this provision in the new Revenue Act of 1934, which became effective at the beginning of that year. See 73rd Congress, H.R. Report 704. Confessedly, therefore, if the so-called reorganization was not completed until 1934, the stock distribution was taxable to the petitioners. See Peabody v. Eisner, 247 U.S. 347. *360 It would seem equally clear on the evidence, for the petitioners do not attempt to controvert the tax-evasion motive of the "reorganization", that even if it took place in 1933, its lack of a genuine business purpose would take it out of the operation of section 112 (g), under the rule of Gregory v. Helvering, 293 U.S. 465. But the statute of limitations has run for 1933, and the question before us is narrowed to whether the distribution was, in fact, accomplished in that year, or, as the respondent contends, extended into 1934, a year which is still open. The respondent points out the haste with which the transaction was hurried through; that not until January 4, 1934 were any stock certificates issued by the new corporation, or the corporate seal bought, and that the check dated December 29, 1933 in payment of corporate registration to the State of Delaware was not paid by the drawee bank until March 22nd, and the requisite revenue stamps for the deal were not bought until the day after; despite representations of various kinds purporting to show the transaction completed before the end of 1933. Respondent suggests that in such circumstances little *361 credence can be given to the evidence that the steps necessary for a distribution were gone through with within the statute-sheltered year of 1933. The testimony of the Coca-Cola Bottling Co.'s bookkeeper was that certain entries were made upon the books of that company for the purpose of showing a distribution to the petitioners of the March Co. stock on December 29, 1933. We can not disregard this evidence, and despite the somewhat topsy-turvey way in which the whole business was handled, we must assume that it was the intention of all the parties to the transaction that the March stock should be then distributed. Respondent contends that no record of the issuance of the March stock on its stock book could have been made before the certificates were issued on January 4, 1934, and that a person becomes a shareholder only by being entered on the stock book, citing Pacific National Bank v. Eaton, 141 U.S. 227 (1891); and argues urther, that under the law of the place of residence of petitioners, the Uniform Law for Transfer of Shares of Stock in Private Corporations is in force under section 4094, Michie's Tenn. Code in 1938 (in effect in the taxable *362 year) [1] which requires for the transfer of shares the delivery of the certificates. One of the questions of the case, therefore, is whether Tennessee law applies to the transaction. *363 Petitioner, on the other hand, relies on the same leading case, Pacific National Bank v. Eaton, supra, for the proposition that certificates are not necessary for stock ownership, which is there stated as follows: * * * The case is not like that of a deed for lands, which has no force, and is not a deed, and passes no estate, until it is delivered. In that case everything depends on the delivery. But with capital stock it is different. Without express regulation to the contrary, a person becomes a stockholder by subscribing for stock, paying the amount to the company or its proper officer, and being entered on the stock-book as a stockholder. He may take out a certificate or not, as he sees fit. Millions of dollars of capital stock are held without any certificate, or, if certificates are made out, without their ever being delivered. A certificate is authentic evidence of title to stock; but it is not the stock itself, nor is it necessary to the existence of the stock. It certifies to a fact which exists independently of itself. * * * We think it unnecessary to discuss more fully a principle so well-settled except where the adoption of the Uniform *364 Stock Transfer Law may have introduced a new rule. This brings us to petitioners' next contention that since Delaware is the domiciliary state of the corporation, Delaware law must govern the issuance of stock of the corporation, which they further buttress by the contention that even in Tennessee the weight of authority is to the effect that the certificate requirement is for the protection of the corporation and has no effect on the legality of the transfer as between a stockholder and his donee, citing Dulin v. Commissioner, 70 Fed. (2d) 828, 831 (C.C.A. 6). It is not necessary to construe the law of Tennessee on this question since we are of the opinion that the law of Delaware determines the rights pertinent to a disposition of this case. Seymour v. National Biscuit Co., 107 Fed. (2d) 59; see Restatement Conflict of Laws, Sec. 53, wherein it is stated: "The State in which the corporation was incorporated has jurisdiction to determine the title to and disposition of the shares." Since Delaware has not enacted the Uniform Stock Transfer Act, see Uniform Laws, Annotated, Book 6, 1942 Supplement, the generally accepted *365 common law rule stated as quoted in Pacific National Bank v. Eaton, supra, is to be applied. See Drug, Inc. v. Hunt, 5 Harr. (Del.) 339, 168 Atl. 87. The Coca-Cola Bottling Co. having transferred certain assets to the March Investment Co. in consideration of the issuance to it of stock of the latter company, became thereby a stockholder of the March Investment Co. before any certificate evidencing that relationship was issued. Being an owner of March stock, it could declare a dividend payable in such stock. This it did by resolution in 1933 and appropriate entries were made upon its books showing a debit to surplus in the amount of the dividend declared with the notation that the entry was made for the purpose of showing a dividend of the March stock distributed to its own stockholders. Thereafter its stockholders were the beneficial owners of the March Investment Co. stock. See secs. 3654, 3678, Fletcher Cyclopedia Corporations. Therefore, the later issuance of the certificates in 1934 has no relevance and it follows that the transaction in question was completed in the earlier year, 1933. Since the testimony *366 of the bookkeeper was that the corporate entries referred to were made on December 30, 1933, as of the 29th, we must conclude that the transfers were complete then, and so hold; and consequently, that there was no taxable distribution of stock made to the petitioners in the later year, 1934. 2. Respondent has determined that the income of the two trusts made by Julius Weil and by his wife, Pauline, for their infant daughter, Pauline, on Christmas Eve 1934, should be taxable to the respective grantors. Since there are somewhat different considerations involved in each trust, we shall consider them separately and the trust of Julius first. (a) Julius Weil's Trust. The trust's purpose (Art. 1) was "to provide, to the extent made possible by said gift, for the care, maintenance, support and education of said beneficiary during her minority, in lieu of the furnishing to her by grantor directly of such care * * * as required of grantor by law." Again, in Art. 9 it is declared that the trustee is "to use such portion of the income and principle as is necessary for the support and maintenance, including education, of Pauline Weil." The trust was irrevocable, and by it the grantor *367 conveyed in trust for his daughter, Pauline, for life, remainder to her children (the corpus to be distributed to them at the age of 21), with a remainder on condition of failure of issue to the grantor's wife, Pauline. He made himself trustee, and conferred on himself as such very broad powers of management. The trust instruments were kept in a safe deposit box in the name of Julius Weil, Trustee, but personal securities of Julius and of his wife were kept in the same box. The trust books were kept on those of the Coca-Cola Bottling Works, personal expenses of Julius and his wife were charged to the account, and it was not until sometime in 1936 that this state of things was unscrambled. Finally in February 1937 a new audit was made and trust books properly set up. On December 31, 1935, after the trust had been in effect for the taxable years 1934 and 1935, Julius amended his trust by striking out that part of Art. 9, which authorizes the trustee to use the income and principal necessary for the support and education of the cestui. We have to consider separately, therefore, the effect of the trust in these years and after its amendment. Respondent's contention, although not clearly *368 defined, is evidently made under section 167 of the Revenue Acts of 1934 and of 1936 [2] as that provision may be construed in the light of section 22 (a), defining "gross income." The trust is asserted to fall under the rule of Douglas v. Willcuts, 296 U.S. 1; as extended in Helvering v. Schweitzer, 296 U.S. 551; and the group of more recent cases, including Helvering v. Clifford, 309 U.S. 331; Helvering v. Horst, 311 U.S. 112; Helvering v. Eubank, 311 U.S. 122; Harrison v. Schaffner, 312 U.S. 579; and Helvering v. Stuart, 317 U.S. 154. *369 The trust for the period ended December 31, 1935 falls clearly within the rule of Helvering v. Stuart, supra, in its application of the rule of attribution supplied by Douglas v. Willcuts, supra, to section 167 (a) (1) and (2), and its income during that period is, therefore, taxable to J. B. Weil. What effect did the amendment of the trust indenture on December 31, 1935 have? By it Julius Weil amended paragraph 9 by striking out the provision giving himself authority as trustee to use any of the trust income or principal for any purpose which he, as the beneficiary's father, was obligated to perform. Respondent urges that the amendment of paragraph 9 did not alter the purpose of the trust declared in paragraph 1, that the trust gift was intended to provide for the care, support and education of the settlor's daughter "in lieu of the furnishing to her by grantor directly of such care * * * as required of grantor by law." Although the point is not argued by the respondent and there is little evidence bearing thereon, we conclude from an examination of the Trustee's Account dated April 15, 1941, that during the years *370 in question sums necessary for the education and maintenance of the daughter were supplied from the personal funds of her father, Julius; and that the amendment changed the purpose of the trust as well as the powers of the trustee, so that income which would otherwise have been spent for the cestui's support and education during her nonage was accumulated and added to the corpus for the ultimate benefit of the daughter and the heirs of her body. We think this a fair construction of the effect of the amendment, and since evidence of a contrary practice is lacking, do not find it necessary to decide what effect the amendment would have if it could be clearly shown that the settlor, as trustee, continued to use the trust income for his daughter's legal support. The situation is distinguishable from that in our recent decision, Seymour H. Knox, 1 T.C. 575, where the trust still authorized the payment of trust income for support of the children although the father-settlor actually himself paid those expenses, whereas no such authority existed in the instant case after the amendment in question. We now approach the question of how Julius's trust is to be *371 treated in the years 1936 and 1937, after the amendment was in effect. Notwithstanding the relation of the settlor-trustee to the beneficiary, we cannot accept respondent's arguments that "irrevocable" as used in the trust instrument is meaningless or that the trust indenture would have easily been destroyed by the settlor, since legal effect is to be given to legal (or equitable) rights and powers, and tortious acts are not to be presumed. If, however, to state more precisely what is probably the respondent's real contention, the legal powers of the settlor-trustee in his dual capacity are cumulatively so great as to constitute substantially ownership of the fund or its income and his conduct of the trusts reflects this attitude, then clearly the tax will be under the rule of Helvering v. Clifford and its related cases, supra. Was that the situation here? As a matter of practice, very little regard seems to have been shown by Julius for the strict execution of the two trusts set up by himself and his wife. The trust accounts were set up on the books of the Coca-Cola Bottling Co., the bookkeeper had never seen the trust indentures, and until sometime in 1936 the bookkeeper *372 even charged to the trust accounts certain personal expenses of Julius and Pauline, his wife. This carelessness is explained in part, it is true, by the sickness of Julius who fell ill while abroad, but the fact remains that until the Weils' lawyer advised doing so, separate trust books were not set up. This was, however, finally done in 1937 and a general audit made. To illustrate the feeling of ownership with which Weil regarded the money of members of his family, the respondent put in evidence a check for $23,500 drawn on January 2, 1936 on the Savings Department of the Broadway National Bank of Nashville and signed "Pauline Weil by J. B. Weil." That he was more scrupulous in regard to the trust fund set up for his daughter remains at least doubtful. In so far as legal powers were concerned, Weil had complete powers of management of the trust for purposes of investment and reinvestment, but, of course, had no powers of revocation. Considering the generally loose administration of the trust, the situation comes very near that in William C. Rands, 34 B.T.A. 1107; appeal dismissed 101 Fed. (2d) 1018; where we held the whole *373 trust without reality and its income taxable to the settlor-trustee. Certainly the powers of management held by the settlor-trustee, the loose administration of the trust and the nexus of relations between the settlor-trustee and beneficiary would without further discussion bring this trust within the rule of the Clifford case, except for the factor of time involved. Here the transfer was for the life of the beneficiary and for 21 years thereafter. But time is, after all, only one factor in the situation. What the settlor had previously had, he in substance still possessed through control of investments and the familial relation. We are unable to see any distinction of substance between this case and Verne Marshall, 1 T.C. 442. We have followed the same rule in Frederick B. Rentschler, 1 T.C. 814, and declared unequivocally that the shortness of the trust term is not in our opinion the determining factor. See also Morton Stein, 41 B.T.A. 994; Commissioner v. Berolzheimer, 116 Fed. (2d) 628 (2nd Cir.); and the cases collected in Pavenstaedt, the Broadened *374 Scope of sec. 22 (a), 51 Yale Law Journal 213, 222 (1941). We think that here the settlor's control was so completed as to make the income of Julius Weil's trust after the amendment, for the years here involved, 1936 and 1937, attributable and taxable to him in spite of the length of the term of the trust. (b) We pass, then, to Pauline Weil's trust for her infant daughter in all important respects identical with her husband's, except that her husband and not the settlor herself was constituted trustee. The trust was, like her husband's irrevocable. It will be observed that the declared purpose of the trust was as in Julius Weil's, the support and education of the beneficiary. There was, however, no amendment of this or any other provisions of the trust in the taxable years. The trust was administered in the same loose and careless fashion as Julius Weil's. The law of Tennessee provides that now mothers, as well as fathers, are charged with the support of their minor children, by section 8463, Michie's Tennessee Code of 1938, which is as follows: Sec. 8463. Fathers and mothers are joint and equal natural guardians of their minor children; and are equally *375 charged with their support, etc. - Fathers and mothers are joint natural guardians of their minor children, and they are equally and jointly charged with their care, nurture, welfare, education and support, and also with the care, management and expenditure of their estates. Fathers and mothers have equal powers, rights, and duties with respect to the custody of their minor child or children, and the control and the services and earnings of such minor child or children; provided, that so much as may be necessary of the net income of such minor child may be expended in his care, maintenance and education. Moreover, the learned commentator on this section makes the following observation on the state of the local law: Effect of Section - The obligation previously resting upon the father to maintain and support his minor children cannot be said to have been destroyed by this statute. That obligation was to provide for the child "in a manner commensurate with his means and station in life." The obligation cast upon the mother by the statute must be measured by the same varying and relative standard. Brooks v. Brooks, 166 Tenn. (2 Beller) 255, 257, 61 S.W. (2d) 654. *376 We must conclude, therefore, that under local law the mother, Pauline, had also an obligation to support of the beneficiary, that this obligation was being discharged by her trust, and consequently, that under the rule of Willcuts' case, supra, the full income of her trust during all of the taxable years was attributable and taxable to her under section 167. Helvering v. Stuart, supra. 3. The respondent has determined that the whole of the proceeds from the sale of the American Tobacco Co. stock made in 1934 was taxable to J. B. Weil personally. The evidence on this issue is confused, contradictory and unsatisfactory. According to the books of the Coca-Cola Bottling Co. the American Tobacco Co. stock was distributed as a dividend in kind, 300 shares to petitioner Pauline Weil and 200 shares to Julius B. Weil, Trustee. This distribution is shown as having been made on December 31 and there is evidence to the effect that it was made pursuant to resolution of the Board of Directors dated December 24, 1934. It was on this latter date that the trust instruments referred to under issue 2 were executed. Before these instruments were executed Pauline *377 Weil held 59 shares of the stock of the Coca-Cola Bottling Co. and Julius B. Weil held 41 shares. After the execution of these instruments Pauline Weil held 34 shares of the stock of the Bottling Co., Julius B. Weil held 33 shares and Julius B. Weil as Trustee held 33 shares. It is, therefore, apparent that whether the resolution declaring this dividend was adopted either before of after the execution of the trust instruments the dividend was preferential and not pro rata according to stock holdings. While the books of the Bottling Co. show the distribution made under date of December 31, 1934, the stock had already passed from the hands of the Bottling Co., 200 shares having been sold in Atlanta, Georgia on December 24, 1934 and 300 shares on December 27, 1934. While the dividend in question purported, according to the books of the company, to be in kind, nevertheless, the stock was sold for the account of the Bottling Co. Although the distributees according to the books of the company were Pauline Weil and J. B. Weil, Trustee, the broker's check representing the proceeds of the sale of this stock was made to the order of Harold Hirsch, who was acting as attorney for all the parties *378 and endorsed by him in blank or to the order of J. B. Weil and applied by Weil on the payment of his personal note of $60,000 on January 10, 1935. Pauline Weil included in her 1934 income tax return the value of the 300 shares of this stock which the books of the Bottling Co. indicate were distributed to her in that year and J. B. Weil, Trustee, reported in his income tax return as trustee for the same year the value of the 200 shares which according to the books of the Bottling Co. were distributed to him as trustee. While the proceeds from the sale of the 200 shares was shown by the broker's records to have been $16,329.17, the audit of the accounts of J. B. Weil, Trustee, made in 1937, shows the trust to have received from the sale of this stock the sum of $16,317.17. This short recital of the facts shown by the record indicate the difficulty of reconstructing what actually occurred. The only explanation which seems to us reasonable under the circumstances is that Weil purchased the stock on his own account but handled the transaction through the corporation which was, obviously, his alter ego and private banker from which funds were always available to him. While this stock *379 was sold on the account of the Bottling Co., the proceeds were given to Weil personally and were used by him in the payment of a personal obligation. In other words, Weil bought the stock; its purchase was financed by the corporation; the stock was sold by Hirsch, the attorney for both Weil and the corporation; and the proceeds were turned over to Weil who used them for his own personal purposes. These seem to us to be the realities of the situation. After the stock was sold on the account of the corporation and before the proceeds were turned over to Weil, certain entries on the books of the corporation purport to show that the corporation distributed this stock as a preferential dividend in kind to Pauline Weil and J. B. Weil, trustee. These entries are inconsistent with known facts and can not affect our conclusion as to the real nature of the transaction. That conclusion is that Weil was at all times the real owner of the American Tobacco stock and it was sold for his benefit in the taxable year. Therefore, the gain resulting from this sale is taxable to him in 1934. Petitioners pray for relief, if we should find against them on this issue, under the "related taxpayer" provision *380 of section 820 (a) (3), which includes in this category, under subsection (a) (3) (A), husband and wife. Subsection (b) (1) includes in "circumstances of adjustment" "a determination under the tax law" which "requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer." That provision, however, strictly limits the meaning of "determination under the tax laws" to mean one of three things, (1) a closing agreement under section 606, Revenue Act of 1928; (2) a decision by this Court or a judgment by other competent court; and (3) a final disposition by the Commissioner of a claim of refund. The present case could only fall within the third situation contemplated above. But it has not been shown that the taxpayers here have ever made any claim for refund; on the contrary, it would seem most unlikely that they had since the claim now advanced for adjustment is alternative only to Weil's main contention. Moreover, our own jurisdiction to decide a question under this section would seem to be doubtful. Anton Dolenz, 41 B.T.A. 1091. In *381 this posture of affairs, we must hold for the respondent. As to petitioner Julius Weil's claim for refund of the additional tax paid on income erroneously returned for 1935, since the claim was timely made, that is, within three years of payment of the tax, section 322 (d), Revenue Act of 1938; and since the year 1935 is before us for determination, Section 272 (g), Revenue Act of 1938; adjustment of the overpayment will be made and it is so ordered. Judgment will be entered under Rule 50. Footnotes
1. Sec. 4094. Transfer of title to shares of stock. - Title to a certificate and to the shares represented thereby can be transferred only. (a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or (b) by delivery of the certificate and a separate document containing a written assignment of the certificate of a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby; such assignment or power of attorney may be either in blank or to a specified person. The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate, and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent.↩
2. SEC. 167. INCOME FOR BENEFIT OF GRANTOR. (a) Where any part of the income of a trust - (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or (3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction); then such part of the income of the trust shall be included in computing the net income of the grantor. (b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."↩