W. L. Loback v. Commissioner.
W. Loback v. Commissioner
Docket No. 18380.
United States Tax Court
1950 Tax Ct. Memo LEXIS 218; 9 T.C.M. (CCH) 333; T.C.M. (RIA) 50098; April 17, 1950
*218 R. B. Hooper, Esq., H. B. Jones, Esq., and A. R. Kehoe, Esq., for the petitioner. William E. Koken, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for 1944 in the amount of $23,712.40. The deficiency arises from respondent's disallowance of capital losses claimed by the petitioner on the sale of a partnership interest, or interests, in 1944, and from respondent's determination that a bona fide partnership did not exist between petitioner and Evelyn Nelms in Nepa Construction Company during the period January 1, 1944, to June 15, 1944, and between petitioner, Evelyn Nelms, and June D. Poling in W. L. Loback & Co., a partnership owning 75 per cent of Nepa Construction Company, during the period June 16 to December 31, 1944. In the event we should find that the distributive shares of partnership income for 1944 which were reported by Evelyn Nelms and June D. Poling as their taxable income should be included in petitioner's taxable income for that year, petitioner contends that the taxes paid by or on behalf of Nelms and Poling should be credited on any liability found against him in this *219 proceeding. Findings of Fact Petitioner is an individual now residing in Canada but who resided at the time this proceeding commenced in Snohomish, Washington. He filed his income tax return for 1944 with the collector of internal revenue at Tacoma, Washington. Prior to 1941 the petitioner was a butcher in a meat market in Seattle, Washington. His education was limited to early high school. While so employed as a butcher, the petitioner constructed small boats as a hobby at his residence in Seattle. In January 1941 the petitioner established the Loback Boat Works as a sole proprietorship to engage in the manufacture of small boats in Seattle. Evelyn Nelms was employed by the petitioner as a bookkeeper and general assistant in the boat shop. The prospects of the business appeared favorable at that time but initially the business produced only enough income for petitioner to live on. Because petitioner lacked the funds to pay Nelms' salary, on July 1, 1941, he entered into a written agreement of partnership with her which provided that the petitioner would have a 75 per cent interest in the Loback Boat Works and that Nelms would have a 25 per cent interest, with profits and *220 losses to be divided in that ratio. The agreement also provided that: "In the event the assets of said partnership shall be used in whole or in part in the establishment of, or acquiring an interest in, any other construction business, then the interest of the parties hereto in such other business shall be in the same ratio above provided, even though such interest shall stand of record in the name of either or both. "First Party [petitioner] shall have the management of the affairs of the partnership." Petitioner contributed $300between and $500 to the business and devoted himself entirely to the manufacturing end of the business. Nelms continued to take care of the books of the business on a full-time basis without receiving a salary. She also $300advanced of her personal funds to the petitioner for use in the business, but this money was repaid to her from the proceeds of boat sales in about 60 days. Gross volume of the business during 1941 was about $10,000. In June of 1942 petitioner and O. J. Blende, a doctor of medicine, by written agreement formed the Nepa Construction Company, a partnership hereinafter referred to as Nepa. Nepa took over the assets of the Loback *221 Boat Works and succeeded that business in the construction of small boats. Nepa also began to manufacture pallet boards, which were wooden platform loading devices used by the military services for the handling of war materials during World War II. Blende contributed $900 in cash to the venture, plus some unimproved real estate of unknown value in Seattle. He also borrowed jointly with the petitioner $11,000 from a bank to be used as working capital. Blende and petitioner each were declared to have a 50 per cent interest in Nepa. Nelms was not a party to the written agreementt and did not sign the note for the bank loan. However, she was present during the discussions leading to the formation of Nepa and Blende was informed of her interest with petitioner in the Loback Boat Works. The written agreement between Nelms and petitioner was never rescinded or terminated. After Nepa was formed Nelms continued to work with the business as bookkeeper but thereafter drew a salary of $15 per week. No changes were made in the physical organization of the business other than for the change in name and the transfer of the books and records of the business to an office in Seattle. The written agreement *222 of partnership entered into when Nepa was formed was dated back to January 1, 1942. The petitioner and Blende executed a certificate of assumed name in compliance with statutory requirements of the State of Washington: The certificate was dated March 1, 1942, but was not filed in the county clerk's office of King County, Washington, until March 28, 1944. The certificate recited that the petitioner and Blende were the sole owners of Nepa. Some time during 1942, R. H. Hendrix acquired a part of Blende's interest in Nepa but Hendrix and Nelms were considered to be members of subpartnerships with Blende and the petitioner, respectively, and not direct partners in Nepa. Soon after Nepa was formed the business grew rapidly. The number of employees increased from seven to 150 during 1942. Petitioner continued to devote his efforts to the manufacturing end of the business. Blende had charge of the office and books and handled the company's contracts. In October 1942 a new plant was constructed in Snohomish and manufacturing operations were moved there but Nepa continued to maintain an office in Seattle. During 1943 and 1944, Nepa's entire income was earned from Government contracts for the *223 manufacture of pallet boards. The gross income of the business increased to about $800,000 in 1943 and to $1,400,000 in 1944. In April 1944 the petitioner and Blende each withdrew $2,000 from undrawn earnings in Nepa but neither Nelms nor Hendrix ever withdrew any funds from Nepa, except for the small salary withdrawn by Nelms. Hendrix was never employed by Nepa in any capacity. The partnership income tax returns filed by Nepa for 1943 and 1944 showed equal division of the profits between petitioner, Blende, Nelms and Hendrix. The partnership was also shown to consist of petitioner, Blende, Nelms and Hendrix in connection with the renegotiation of certain army contracts in the spring of 1944. In April 1944 the petitioner became dissatisfied with Blende's handling of Nepa's business, and negotiations were commenced between petitioner and Blende leading to a dissolution of the existing partnership. On June 16, 1944, petitioner, Blende and Hendrix entered into a written agreement by which the interests of Blende and Hendrix in Nepa were transferred to petitioner in consideration of $30,000 in cash paid to Blende by petitioner and the transfer by petitioner to Blende of petitioner's *224 one-half interest in a Cadillac automobile worth $850. A subsequent written agreement entered into by petitioner and Blende on June 21, 1944, rescinded the earlier agreement. The agreement of June 21 recited the payment by petitioner to Blende of the previously agreed consideration and provided that petitioner would procure a release from Nelms for the benefit of Blende and that Blende would procure a similar release from Hendrix for petitioner as to whatever interests Nelms and Hendrix had in Nepa. Petitioner did procure the release from Nelms for Blende, but there is no evidence that Blende procured a release from Hendrix for petitioner. Prior to the purchase by petitioner of the 50 per cent interest in Nepa, held by Blende and Hendrix, petitioner had discussed the situation with June D. Poling, an employee of Nepa, and G. K. Griffith, a navy purchasing agent. Poling had been employed in the Nepa plant during 1943 on a salary basis, operating carloading machinery. At the beginning of 1944 Poling became personnel manager of the plant on a salary basis until the end of May 1944. In the early part of June 1944 Poling agreed to purchase a 25 per cent interest in Nepa from petitioner *225 for $6,000 in cash if and when such an interest could be acquired from Blende and Hendrix. Petitioner had been required to pay $10,000 in cash on June 1, 1944, as part of a divorce settlement and did not have sufficient funds of his own to buy out the Blende and Hendrix interests in Nepa at that time. Poling paid the $6,000 in cash from her personal savings to petitioner at that time and he used that money, in addition to his own funds and money borrowed from other sources, to pay Blende for the 50 per cent interest in Nepa held by Blende and Hendrix. Griffith also agreed to acquire a similar 25 per cent interest in Nepa from petitioner for $6,000 in cash, which he paid to petitioner in July 1944 Griffith also assumed the handling of Nepa's contracts with the military services and the petitioner continued to devote his efforts to the manufacturing end of the business. After petitioner acquired the 50 per cent interest in Nepa formerly held by Blende and Hendrix, on the advice of his attorney, his accountant, and his banker, he set up a subpartnership as of June 16, 1944, under the name W. L. Loback & Co., to hold a 75 per cent interest in Nepa. He then entered into a written agreement *226 with Poling by which he transferred a 25 per cent interest in W. L. Loback & Co. (actually intended to be a 33 1/3 per cent interest in W. L. Loback & Co., representing a 25 per cent interest in Nepa) to Poling. He also entered into a separate written agreement of partnership with Griffith which recited the sale of a 25 per cent interest in Nepa to Griffith by W. L. Loback & Co. and the retention by it of 75 per cent interest in Nepa. Neither Nelms nor Poling was a party to the agreement but both knew about it, having participated in the negotiations antecedent to it, and Griffith knew the nature of their interests in W. L. Loback & Co. As a result of the efforts of Griffith and petitioner, the new partnership obtained additional contracts from the military services for the manufacture of pallet boards. Petitioner continued to devote his entire efforts to the manufacturing end of the business. Poling continued to act as personnel manager of Nepa through the end of 1944, but without a salary. Griffith went overseas with the navy shortly after he became a partner in Nepa. Nelms married and moved from Snohomish so that she was no longer active in the business. On July 27, 1944, the *227 petitioner and Griffith executed a certificate of assumed name which recited that they were individually the sole owners of Nepa. This certificate was not filed with the county clerk's office for King County, Washington, until March 11, 1947. W. L. Loback & Co. never filed any certificate of assumed name in compliance with Washington statutes. The capital accounts for partners in Nepa were maintained only for W. L. Loback & Co. and for Griffith. Capital accounts were maintained for Nelms, Poling, and the petitioner in W. L. Loback & Co. Profits withdrawn from Nepa by petitioner were credited to the account of W. L. Loback & Co. and were in turn distributed to Nelms, Poling, and petitioner as partners in that subpartnership. During 1944, in order to conserve the working capital of Nepa, the partners agreed not to withdraw profits. Petitioner advanced $500 to Nelms at her request in December 1944 and charged it against her partnership account in W. L. Loback & Co. No other profits were withdrawn by any of the partners between June 16, 1944, and December 31, 1944, except for salary withdrawn by petitioner. The partnership income tax return filed for Nepa for the period from January 1, 1944, to *228 June 15, 1944, showed net income of $48,327.23 distributed in equal shares to Blende, Hendrix, Nelms and petitioner. The partnership return filed for Nepa for the period June 16 to December 31, 1944, showed net income of $46,399.90, of which $7,200 was distributable to petitioner as salary. Of the balance, 75 per cent, or $29,399.93, was distributable to W. L. Loback & Co., and 25 per cent, or $9,799.97, was distributable to Griffith. The partnership return filed for W. L. Loback & Co., for the latter period showed $29,399.93 of net income derived from its business as subpartnership in Nepa and divided that sum into three equal shares, distributable to Nelms, Poling, and petitioner. The individual income tax returns filed by the partners for 1944 showed in addition to amounts paid as salary distributions of partnership from W. L. Loback & Co., to Nelms of $12,081.80 from Nepa and $9,799.98 from W. L. Loback & Co., to Nelms of $12,081.80 from Nepa and $9,799.97 for W. L. Loback & Co., and to Poling of $9,799.98 from W. L. Loback & Co. In 1945 and 1946, Nepa profits were credited 75 per cent to W. L. Loback & Co. and 25 per cent to Griffith. The share of profits distributable to W. *229 L. Loback & Co. from Nepa amounted to $77,425.41 in 1945 and $34,678.48 in 1946. W. L. Loback & Co. profits were in turn credited in equal shares to the capital accounts of Nelms, Poling, and petitioner, who withdrew substantial amounts against their individual capital accounts in these years. Petitioner and Poling were married in 1946 and soon thereafter Poling terminated her active participation in the business. The partnership books show a transfer on December 31, 1946, of $37,197 from Poling's to petitioner's capital account for the purpose of combining the accounts. There has never been any agreement terminating the Nepa partnership or changing the partners' interests therein. In his individual income tax return for 1944 petitioner claimed long and short-term capital losses on sales of partnership interests in Nepa to Poling and Griffith of $17,079.06 and $14,137.30, respectively, and deducted $1,000 from ordinary income as a capital loss deduction. Respondent disallowed the $1,000 deduction on the ground that petitioner had failed to substantiate the cost or sale price of the interests in Nepa. Respondent also determined that there was no bona fide partnership between petitioner, *230 Nelms, and Poling at any time during 1944, and that the distributive shares in Nepa credited to Nelms and Poling in 1944 were taxable income to petitioner. Respondent did not question the validity of the partnership in Nepa between petitioner and Griffith. Loback Boat Works was a genuine partnership in which petitioner owned a 75 per cent interest and Nelms a 25 per cent interest. Nepa was a genuine partnership in which, until June 1944, petitioner owned a 37 1/2 per cent interest, Nelms a 12 1/2 per cent interest and Blende and Hendrix, jointly, a 50 per cent interest. After June 15, 1944, the partners in Nepa and their interests were W. L. Loback & Co. 75 per cent and Griffith 25 per cent. W. L. Loback & Co. was a genuine partnership in which petitioner owned 50 per cent, Poling 33 1/3 per cent and Nelms 16 2/3 per cent, representing interests in Nepa of 37 1/2 per cent, 25 per cent, and 12 1/2 per cent respectively. Opinion LEMIRE, Judge: The principal issue in this proceeding is whether Evelyn Nelms and June D. Poling were bona fide partners with the petitioner and G. K. Griffith in Nepa Construction Company during the period June 16 to December 31, 1944, or whether the distributive *231 shares of partnership income for that period which they reported in their individual returns are taxable to petitioner. The same issue is also presented as to Nelms' claimed partnership interest in a partnership with petitioner, Blende, and Hendrix during the period from January 1 to June 15, 1944. Whether a partnership should be recognized for tax purposes depends upon whether the partners really intended to join together as partners for the purpose of carrying on business and sharing in the profits and losses. Their intention in this respect is a question of fact to be determined from consideration of all the evidence. Commissioner v. Tower, 327 U.S. 280; Commissioner v. Culbertson, 337 U.S. 733. Respondent contends that petitioner has failed to carry his burden of proof that Nelms and Poling were partners with him in the business and were entitled to the distributive shares of partnership earnings which they reported in their returns. We think the petitioner has presented ample evidence to meet that burden of proof. Petitioner organized Loback Boat Works in January 1941 to manufacture boats on his own residential premises with a very small capital. *232 He employed Nelms as a bookkeeper and general assistant in the shop. On July 1, 1941, lacking funds to pay her salary, he entered into a written agreement of partnership with her. By the terms of the agreement she took a 25 per cent interest in Loback Boat Works and was to continue to work full time for the business without a salary. Petitioner and she agreed that their relative interests in Loback Boat Works would be preserved in the event the assets of the partnership should be used in the establishment of, or the acquisition of an interest in, any other construction business, however the interest might stand of record. We think that Nelms' 25 per cent interest in Loback Boat Works was a real partnership interest and we have so found. In the early part of 1942 petitioner entered into an agreement with O. J. Blende to form a new partnership, Nepa. Nelms was not a party to the agreement, but she participated in the negotiations leading to the formation of Nepa and Blende was informed of her interest in Loback Boat Works and of the understanding between Nelms and petitioner to preserve her interest in any new business. Blende contributed cash, some undeveloped real property, and *233 credit for a 50 per cent interest in Nepa. Nepa was operated as a successor partnership to Loback Boat Works, with Nehms having the status of a subpartner with petitioner in a 50 per cent interest in Nepa and with R. H. Hendrix subsequently having the status of a subpartner with Blende in a 50 per cent interest. Under her agreement with petitioner, which according to the evidence has been at all times preserved, Nelms held a 12 1/2 per cent interest in Nepa, representing her original 25 per cent interest in the Loback Boat Works. Petitioner's acquisition of the Blende and Hendrix interests in Nepa, his subsequent sale of those interests to Poling and Griffith, and the formation of the new subpartnership, W. L. Loback & Co., had no effect on Nelms' interest in the business. Although petitioner contends that Nelms had a 33 1/3 per cent interest in W. L. Loback & Co., or a 25 per cent interest in the Nepa, the evidence is that her interest in W. L. Loback & Co. was not in excess of 16 2/3 per cent, or 12 1/2 per cent of Nepa. The fact that larger distributive shares of partnership income were credited to her on the books does not determine her interest in the business. The distributive *234 share of income to a partner is determined by the agreement of the partners, not by bookkeeping entries. Cf. Hellman v. United States, 44 Fed. (2d) 83; Schwerin v. Commissioner, 139 Fed. (2d) 843. We conclude that 16 2/3 per cent of the income of W. L. Loback & Co., or 12 1/2 per cent of the income of Nepa, was the taxable income of Nelms in 1944. June D. Poling had been an employee in the Nepa plant in 1943 and had been personnel manager of the business during the early part of 1944, but a partnership interest is claimed for her only during the period June 16, 1944, to December 31, 1944. As the result of ill feeling between petitioner and Blende in the early part of 1944 petitioner decided to buy out the 50 per cent interest in Nepa held by Blende and his subpartner Hendrix. Petitioner did not have sufficient cash on hand to pay the $30,000 in cash required by Blende for his interest and Poling agreed to and did advance him $6,000 of her savings for which petitioner was to assign to her a 25 per cent interest in Nepa. Petitioner used that money, together with some of his own funds, to buy the Blende and Hendrix interests. He then owned, temporarily, an *235 87 1/2 per cent interest in Nepa and Nelms owned a 12 1/2 per cent interest. Petitioner then transferred a 25 per cent interest in Nepa to Poling at the price agreed upon, $6,000. After that date, June 16, 1944, Poling continued to work full time as personnel manager of Nepa without salary, receiving 25 per cent of the profits. Her 25 per cent partnership interest in Nepa is established by her contributions of capital and services to the business. Soon after petitioner's sale of a 25 per cent interest in Nepa to Poling he sold a 25 per cent interest to G. K. Griffith for the same price, $6,000 cash. On the advice of his attorney, his accountants, and his banker, petitioner, with the consent and agreement of the other partners, created a subpartnership, W. L. Loback & Co., to hold a 75 per cent interest in Nepa, consisting of the interests owned by him, Poling and Nelms. Nepa was then operated as a partnership composed of W. L. Loback & Co. and Griffith. Respondent has not questioned the reality of that partnership. The evidence contains some inconsistencies as to the interests of the several partners in the various partnerships but we have determined the partnership interests in *236 accordance with what we consider the best evidence of record. The second principal issue in this proceeding is whether petitioner sustained a capital loss on the sales of partnership interests to Poling and Griffith in 1944. Respondent disallowed the $1,000 loss deduction claimed on the ground that petitioner had failed to substantiate either the bases for the interests sold or the prices received for them. Petitioner conceded at the hearing and on brief that the schedule presented in his income tax return for 1944 with respect to the claimed capital loss deduction does not conform to the facts as brought out by the evidence adduced at the hearing. We have found from the evidence presented that petitioner paid $30,850 in cash and other property to Blende for those interests and that he received $6,000 in cash from Poling and $6,000 in cash from Griffith for them. Respondent argues that petitioner did not sell an interest in the business to Poling for $6,000 but merely accepted her money as an investment in the business. He argues further that petitioner did not sell an interest to Griffith but instead acted as agent for Griffith in buying that interest for him from Blende. While *237 petitioner did negotiate with Poling and Griffith prior to the acquisition of Blende's interest to find out if they would be interested in buying interests in the business, the evidence is clear that he purchased Blende's interest on his own account. The evidence supports our conclusion that petitioner bought out Blende's interests in the business for $30,850 and later sold those interests to Poling and Griffith for a total of $12,000. We think that the respondent erred in his disallowance of the capital loss deduction claimed by petitioner. The final issue is whether petitioner is entitled to credit under section 3801, Internal Revenue Code, on his liability for 1944 taxes for the amount of any taxes overpaid by or on behalf of Nelms and Poling on account of income which was properly taxable to petitioner. Section 3801 (b) provides that adjustments may be made only after "a determination under the income tax laws" becomes final. Section 3801 (a) (1) strictly defines a determination under the income tax laws as: "(a) Definitions. - For the purpose of this section - "(1) Determination. - The term 'determination under the income tax laws' means - (A) A *238 closing agreement made under section 3760; (B) A decision by the Board of Tax Appeals or a judgment, decree, or other order by any court of competent jurisdiction, which has become final; or (C) A final disposition by the Commissioner of a claim for refund. * * *" Since there is no evidence of any other "determination under the income tax laws," any possible adjustment herein could come only under section 3801 (a) (1)( (B) which requires a decision by the court which has become final as to the principal issues involved. A question under section 3801 cannot arise until after our decision herein becomes final. We have no jurisdiction to make the adjustment petitioner desires. Anton Dolenz, 41 B.T.A. 1091. Decision will be entered under Rule 50.